## THE HADJI.

*(District Court, S. D. New York. November 1, 1883.)*

BILL OF LADING — COMMON CARRIERS — PARTIAL LIMITATION OF LIABILITY — VALUE OF GOODS.

A stipulation in a bill of lading that "in case of loss, damage, or non-delivery the ship-owner shall not be liable for more than the invoice value of the goods," is valid as a reasonable regulation providing a rule of damages in case of loss, competent to the parties to adopt, and convenient and politic in practice, for the speedy settlement of losses and the suppression of litigation.

In Admiralty.

*Sidney Chubb*, for libelant.

*Butler, Stillman & Hubbard*, for claimant.

BROWN, J.    Under a decree of this court adjudging the libelant entitled to damages for injuries to 14 cases of goods shipped on the Hadji from New York to St. Thomas, West Indies, for negligence in the construction or repair of her ballast tanks, (16 FED. REP. 861,) the damages have been adjusted by the commissioner upon the basis of six and one-half cents per yard as the market value of the goods at St. Thomas, if uninjured.   Exceptions have been filed to this finding, grounded upon the provisions of the bill of lading, which, besides undertaking to exempt the ship from losses through negligence, contained a clause in these words: "In case of damage, loss, or non-delivery, the ship-owners are not to be liable for more than the invoice value of the goods."   The invoice value was five cents per yard instead of six and one-half.   The latter price has been allowed by way of damages, on the ground that where the injuries were caused by the fault or negligence of the vessel or her owners, any limitation upon the recovery of full damages is invalid.

The case of *The Hindoo*, 1 FED. REP. 627, which is referred to as authority for this view, does not seem to me to meet the present case. An examination of the record in this court shows that the limitation of liability in the case of *The Hindoo* was fixed by a printed form of the bill of lading at £100; the value of the goods shipped was very much greater; and the clause of limitation was a general one, applicable to all shipments and all goods, without any reference either to the cost or value or amount of goods shipped.   The limitation to £100 was, therefore, manifestly as arbitrary and as unreasonable as a general exemption from all liability would have been, and justly held, therefore, to be within the principles laid down in *Railroad Co.* v. *Lockwood*, 17 Wall. 357, and in *Bank of Kentucky* v. *Adams Exp. Co.* 93 U. S. 174.   Those cases, however, expressly recognize the lawfulness of stipulations for limitation of liability which are just and reasonable, and it is for the court to determine whether any particular limitation is just and reasonable, and consistent with the rights of the community and sound policy.

In the case of *Express Co.* v. *Caldwell*, 21 Wall. 264, STRONG, J., says, (page 266:)

"It is undoubtedly true that special contracts with their employers, limiting their liability, are recognized as valid, if in the judgment of the courts they are just and reasonable, if they are not in conflict with sound legal policy, * * * and even when such a stipulation has been obtained, the court must be able to see that it is not unreasonable."

Again he says, (page 267:)

"It is now the settled law that the responsibility of a common carrier may be limited by an express agreement made with his employer at the time of his accepting goods for transportation, provided the limitation be such as

the law can recognize as reasonable, and not inconsistent with sound public policy."

In several decisions of the federal courts in this and other circuits, the stipulations of express companies limiting their responsibility to a fixed sum, unless a larger value of the goods was disclosed, have been held to be reasonable and sustained as valid, as in effect fixing by agreement the value of the goods. *Hopkins* v. *Westcott,* 6 Blatchf. 64; *Muser* v. *Amer. Exp. Co.* 1 FED. REP. 382; *Mather* v. *Amer. Exp. Co.* 2 FED. REP. 49. So various stipulations in bills of lading, or in carrier's receipts, have long been held competent, in case of loss or damage, to change the burden of proof from the carrier and throw it upon the shipper, to enable the latter to recover, (*Clark* v. *Barnwell,* 12 How. 272; *Transp. Co.* v. *Downer,* 11 Wall. 129; *Wertheimer* v. *Pennsylvania R. Co.* 1 FED. REP. 232;) and in the case of *Exp. Co.* v. *Caldwell,* 21 Wall. 264, above referred to, a stipulation requiring all claims for damage or loss to be made within 90 days, was upheld as a reasonable limitation. *Lewis* v. *Great Western, etc., Co.* 5 Hurl. & N. 867.

In stipulating, as in this bill of lading, that in case of loss or damage the liability of the ship-owners should not extend beyond the invoice value of the goods, the parties have in effect agreed upon the value of the goods for the purpose of adjusting any loss that might arise; they have provided a rule of damages for themselves, to the effect that the owner should be indemnified for the actual cost of his goods, but should not claim any expected profits in a foreign market. There appears to me to be nothing so unreasonable or impolitic in this stipulation, or rule of damages, as to warrant the court in holding it void. In principle, it falls within the cases above cited of reasonable regulations which it is competent for the parties to make. It has nothing analogous, as it seems to me, to those stipulations which provide for a total exemption of a carrier from liability for his own negligence, which the supreme court, in *Railroad Co.* v. *Lockwood,* and in other cases, have condemned.

The foundation of the rule in the cases last referred to is said by STRONG, J., (93 U. S. 183) to be "that it tends to the greater security of consignors, who always deal with such carriers at a disadvantage; it tends to induce greater care and watchfulness in those to whom an owner intrusts his goods, and by whom alone the needful care can be exercised. Any contract that withdraws a motive for such care, or that makes a failure to bestow upon the duty assumed extreme vigilance and caution more probable, takes away the security of the consignors, and makes common carriers more unreliable." In a stipulation which subjects the carrier to liability for all actual cost or outlay, and in effect merely excepts expected profits, there is no lack of inducement in the carrier to the utmost care and diligence; nor can the additional liability for expected profits, through recovery of the value in a foreign market, be deemed to add substantially to the

motives already existing as a guaranty for the full performance of a carrier's duty.

There are, moreover, special reasons of convenience and policy why this measure of damages may well be adopted between the parties and sustained by the court. In case of loss or injury it avoids controversy as to the value in foreign and distant countries, often a matter difficult to ascertain with any accuracy, and uncertain and unsatisfactory on the proofs. The invoice value, as the limit of liability, renders the ascertainment and adjustment of the damages comparatively easy, and tends materially to check the litigious prosecution of exaggerated claims of damage which this court has been often called on to rebuke.

Where such a stipulation is deliberately entered into, as evidenced by the bill of lading and the shipment of goods under it, I think it should, therefore, be sustained as one which is reasonable and competent for the parties to make, and in no degree incompatible with the principle of the decisions above referred to. The charge of the circuit judge in *Hart* v. *Pennsylvania R. Co.* 7 FED. REP. 630, is directly in point, sustaining the validity of such a stipulation as the present, and, as it seems to me, should be followed.

This exception is therefore allowed, and the amount due should be adjusted accordingly.