Cardwell v. Railroad Co.

M. W. CARDWELL, *Appellant*, V. THE UNION PACIFIC
RAILROAD COMPANY et al., *Appellees*.

No. 18,234.

SYLLABUS BY THE COURT.

1. APPEAL—*Jurisdiction of Supreme Court—Amount Directly
Affected by Alleged Error Less than $100*. The supreme court
has jurisdiction of an appeal notwithstanding the amount in
controversy directly affected by the error relied upon for re-
versal is less than $100, if there is a fair basis for the conten-
tion that the error affects the entire verdict and indicates that
the complaining party has not had a fair trial upon a claim
involving in the aggregate more than $100.

2. VERDICT—*Not at Variance with Evidence*. The verdict in the
present case is not shown to be so at variance with the evidence
as to require a new trial, and the judgment is affirmed.

3. GRAIN IN TRANSIT—*Shrinkage—Judicial Notice*. The courts
will take judicial notice of the natural shrinkage of grain in
transit; and the legislature having recognized the fact that
wheat in transit will naturally shrink as much as one-fourth
of one per cent of its total weight, no proof is required of this
well-known fact.

Appeal from Jefferson district court; OSCAR RAINES,
judge. Opinion filed November 8, 1913. Affirmed.

*Stephen H. Allen, Otis S. Allen, Robert Stone,* and
*George T. McDermott,* all of Topeka, for the appellant.

*R. W. Blair, C. A. Magaw,* and *T. M. Lillard,* all of
Topeka, for the appellee The Union Pacific Railroad
Company.

The opinion of the court was delivered by

PORTER, J.: The plaintiff owns an elevator at the
town of Perry and shipped at different dates six cars
of grain over the defendant's railway. Alleging that
some of the grain was lost in transportation, he sued
to recover its value. The jury found generally for
the defendant. The court approved the verdict and

gave judgment against the plaintiff for costs. The sole question here is whether the verdict and judgment are sustained by the evidence. Counsel for plaintiff admit there was no error in the rulings of the trial court; that the jury were fairly and correctly instructed as to the law; that there was no passion or prejudice injected into the case by either side; that, "as jurors go, they were a pretty fair group of men," and that there is not the slightest doubt that the verdict was honestly rendered. But it is said that the verdict resulted in such a shock to plaintiff and his counsel that they have not yet completely recovered therefrom.

The evidence we are asked to review has to do with only four of the six cars. The plaintiff concedes a conflict in the testimony respecting each of the other shipments. It appears that the value of the grain alleged to have been lost from these four cars amounts to less than $100, and the defendant moves to dismiss the appeal. The plaintiff resists the motion and contends that the verdict as to these specific cars is so wholly at variance with the testimony as to render it clear and convincing that the entire verdict is infected by the same error which it is insisted must have arisen through some misapprehension of the jury. He asks therefore that a new trial be granted as to all of the shipments.

If it can be said that the record discloses a fair basis for the claim, we have jurisdiction of the appeal even though plaintiff fails to convince us that his contention is sound. Manifestly if the jury are shown to have disregarded undisputed evidence of material facts, so that there is reason to believe that the party complaining has not had a fair trial, it is the duty of the court to set the verdict aside and order another trial. (*Sundgren v. Stevens,* 86 Kan. 154, 119 Pac. 322.) While the plaintiff's contention appears to be made in good faith, we are far from being convinced that the verdict is

Cardwell v. Railroad Co.

not sustained by evidence. The burden was on plaintiff to show a loss of grain from the cars while in the possession of the defendant.

The cars in question will be referred to as numbers 1, 2, 3 and 4. Numbers 1, 2 and 3 were first weighed on the scales of the plaintiff at Perry, again on the scales of the defendant at Armstrong, and again by inspectors of the board of trade of Kansas City, Mo. The plaintiff makes another concession, which is, that the evidence introduced by the defendant was sufficient to support a finding that the scales of the plaintiff at Perry were inaccurate, and it is admitted that the weights at Perry must be wholly disregarded. As to these three cars the plaintiff's whole case must rest upon the variance between the weights at Armstrong and the board of trade weights at Kansas City. The evidence shows that the net weights at Armstrong were arrived at by subtracting from the gross weight the marked or stenciled weight of the cars, while at Kansas City the wheat was all elevated from the cars before it was weighed and then returned to the cars, so that the weight of the empty cars was not considered. There was evidence that the actual weight of a car often varies from the marked or stenciled weight on account of the weather and other conditions. It is said to be a generally recognized fact in this country that wheat will shrink as much as one-fourth of one per cent in transit, and our attention is called to the recognition of the same fact by section 7103 of the General Statutes of 1909, which requires bills of lading to state the exact number of bushels or pounds of grain delivered to the railway company, and which provides that if the shrinkage does not exceed one-fourth of one per cent the railway company shall be deemed to have delivered the whole amount of grain in the car.

The discrepancy between the two weights on car number 1 was 370 pounds. Allowing for a shrinkage of

one-fourth of one per cent of the total weight of the grain would reduce this to 200 pounds. In car number 2 the discrepancy was 360 pounds, but allowing for the same percentage of shrinkage on the total weight of grain reduces it to 197 pounds; and by the same process the discrepancy on the third car would appear to be but 120 pounds. There was evidence of a number of the employees of the defendant that these cars were inspected and that none of them was found in a leaky condition. There was some conflict in the evidence respecting the condition of the cars but the jury have resolved that conflict against the plaintiff. An argument is made by plaintiff that the evidence introduced by the defendant as to the condition of the cars was largely negative and that this character of evidence is not entitled to as much weight as some affirmative testimony offered by the plaintiff. But this requires us to weigh the testimony, which it is not our province to do. The plaintiff claims also that there was no evidence offered as to the natural shrinkage of wheat in transit, and that had there been, he was prepared to offer evidence of a specific shipment of wheat to New Orleans in which there was not so much as a pound of shrinkage. We think it was not necessary that evidence be offered of this fact which seems to be so well known that the courts will take judicial notice of it. As observed, the legislature has recognized it as an established fact. Nor would the evidence which plaintiff claims to have been prepared to offer have been sufficient, in our judgment, to disprove the fact that there is a natural shrinkage in grain of that kind. Whether any such shrinkage occurred during a specific shipment could hardly be determined without assuming the absolute accuracy of the initial and receiving weights. The season of the year and other conditions when the shipment was made might become material. Besides judicial notice dispenses with proof. (*Insurance Office v. Woolen-mill Co.*, 72 Kan. 41, 82 Pac. 513.) In the pres-

ent case it appears that the grain was shipped in July, soon after it was threshed, and the jury may have drawn to their aid their general information of the conditions at that particular time and may have made even a larger allowance for natural shrinkage.

The fourth car of grain was shipped from Kansas City to the plaintiff at Perry. It was weighed at Kansas City November 26, 1909, and according to the evidence weighed 59,970 pounds. It was weighed December 5, ten days later, at Armstrong, when the contents were found to be 3970 pounds less than when weighed on November 26. There is a dispute in the evidence as to when this car came into possession of the defendant, or in whose possession it was for the ten days that intervened between November 26 and December 5. The net weight of this car on the track scales of the company at Armstrong was determined according to the marked or stenciled tare of the car, while the net weight at Kansas City was determined by the actual weight of the grain. In the brief of the defendant it is claimed that there was no evidence tending to show that the defendant received the car before December 5, or that the defendant was responsible for its contents during the ten days. It is also claimed by the defendant that the evidence showed that this car was received by the Union Pacific elevator on November 26, 1909, and it is admitted that the defendant has no interest in that elevator. While the discrepancy in this instance was very large, amounting to 66 bushels, we can not say that there was no evidence to sustain the finding of the jury that there was no loss while the car was in the possession of the defendant. We are unable to say from the evidence abstracted by the parties that there was no evidence to sustain the verdict or that the plaintiff was denied a fair trial.

It follows that the judgment will be affirmed.