DAVIS, Director General and Agent, *et al v.* L. N. DANTZLER LUMBER Co.

[89 South. 148. In Banc. No. 2848.]

1. RAILROADS. *Garnishment authorized by Federal Control Act, but in accordance with Transportation Act.*

The provision in the Federal Control Act of March 21, 1918 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, section 3115¾j), providing that "carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law. . . . Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law"—authorizes a suit against a carrier under government control for a cause of action arising before such control, and in such suit another carrier being operated under government control may be garnished, and a judgment be rendered against it for a debt it owes the principal defendant; but no execution can be rendered on such judgment against the director general of the government, but the judgment plaintiff must proceed in accordance with the Transportation Act of 1920 for collection of such judgment. In such suit the different transportation systems being operated by the government are treated as separate parties for the purposes of suit and accounting.

2. GARNISHMENT. *Garnishee in attachment may not plead any defense personal to principal defendant.*

In a suit by attachment against a nonresident defendant, who has only been served by publication, and who has entered no personal appearance, a garnishee in such suit may not plead for the principal defendant any defense which is personal to the defendant; and this is true, even though the garnishee is a carrier being operated by the United States government under the Transportation Act of March 21, 1918 (40 Statutes at Large, 451, Federal Stat. Ann. Supp. 1918, pp. 757, 762 [U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, section 3115¾j]).

3. APPEAL AND ERROR. *Supreme court may enter judgment which it is apparent of record should be entered.*

Under section 4919, Code of 1906 (section 3195, Hemingway's Code), so providing, the supreme court on reversal of a case may, where the record makes it apparent what judgment should have been rendered in the court below, enter such judgment here. This should always be done, where there is no new fact to be determined, in furtherance of the policy of ending litigation.

APPEAL from chancery court of Harrison county.

HON. D. M. WATKINS, Chancellor.

Suit by the L. N. Dantzler Lumber Company against James C. Davis, Director General and Agent, with the Mobile & Ohio Railroad Company and others as garnishees. Judgment for plaintiff, and the Director General appeals. Reversed, and modified judgment rendered.

*Carl Marshall* and *Fox & R. C. Beckett,* for appellant.

*White & Ford,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

The appellee filed suit against the Texas & Pacific Railway Company as defendant, and various other railroad companies doing business and operating through the state of Mississippi as garnishees. Among the railroad companies so made defendants for the purpose of garnishments

was the Mobile & Ohio Railroad Company. The suit grows
out of an injury to a shipment of cattle from Ft. Worth,
Tex., to a station in Harrison county, Miss., on the Gulf
& Ship Island Railroad. Said bill of lading evidencing said
shipment was dated October 10, 1917. During the time the
cattle were in transit some of them died and others were
injured, all of which it was alleged was the result of the
negligence of the Texas & Pacific Railway Company. Suit
was filed on March 25, 1918, in the chancery court of Har-
rison county, where the complainant lived, and in the coun-
ty to which said cattle were consigned; garnishments were
issued the same day, and served on the Mobile & Ohio Rail-
road Company the following day.

The Mobile & Ohio Railroad Company answered, ad-
mitting certain indebtedness, but set up that the moneys
constituting said indebtedness came into its possession
during the period in which the United States government
had taken over and was operating the railroads for war
purposes, and challenged the jurisdiction of the court to
entertain jurisdiction, so as to render judgment against
it, or to subject its funds to the demands of the complain-
ant.

The court below dismissed the suit for want of jurisdic-
tion; jurisdiction being acquired only by publication as
to the Texas & Pacific Railway Company, and by service of
writs of garnishment on the other railroad companies.
From this judgment the complainant appealed to this
court, and on March 3, 1919, the judgment of the court be-
low was reversed and the cause remanded. A report of
the case as it then stood appears in the case of *L. N. Dantz-
ler Lumber Co.* v. *Texas & Pacific Railway Co. et al.,* 119
Miss. 328, 80 So. 770, 4 A. L. R. 1669, where a full state-
ment of the case as it then existed is set out. On the case
being remanded, a supplemental bill was filed, and addi-
tional garnishments issued against the railroad companies
doing business in the state of Mississippi; an additional
garnisment being served on the Mobile & Ohio Railroad
Company.

The Mobile & Ohio Railroad Company, as a corporation, answered the additional garnishment, denying that it was indebted to the Texas & Pacific Railway Company, and denying that it had any property belonging to the Texas & Pacific Railway Company in its possession at the time of the service of the garnishment or since, and setting up that the original garnishment was not served upon any agent of the Mobile & Ohio Railroad Company, a corporation, but that the process in the original suit was served on the agent of the Director General operating the Mobile & Ohio Railroad at said time, and that no service was had upon the Mobile & Ohio Railroad Company, or any agent of it acting in its corporate capacity.    It further set up in its answer that on the 27th of October, 1916, the Texas & Pacific Railway Company was placed in the hands of receivers at the suit of certain parties set forth, and that when receivers were appointed in the equity side of the district court of the Western District of Louisiana, Monroe Division, the receivers were appointed for all property of every kind of the Texas & Pacific Railway Company, and that from said date until the 28th day of December, 1917, said railroad properties were operated by receivers, and not by the Texas & Pacific Railway Company, and that on the 28th day of December, 1917, the United States government took possession and control of the railroad properties owned by the Texas & Pacific Railway Company, along with the other transportation systems of the United States, and continuously operated said railroad properties, to the exclusion both of the Texas & Pacific Railway Company and of the said receivers since said time.    It was further alleged in the answer of garnishment that, should any decree be rendered against the said Mobile & Ohio Railroad Company as a corporation for any sum of money whatever, respondent would be required to pay money that it did not owe and never owed, and for which it never received any consideration or compensation, that it would be to deprive it of the equal protection of the law, and would be a taking of its property without due process of law, in

violation of the Fourteenth Amendment of the Constitu-
tion of the United States. It further answered that the
President of the United States, in taking over the property
of the Mobile & Ohio Railroad Company, along with other
transportation systems, under the Act of March 21, 1918,
known as the Federal Control Act (U. S. Comp. St. 1918,
U. S. Comp. St. Ann. Supp. 1919, sections 3115 3-4a13115
3-4p), and the proclamations and orders of the Director
General made in pursuance of said act of Congress, ex-
empted the respondent from suit or judgment in this case.

The Director General filed an answer to the supplemental
bill, setting up that on the 26th day of December, 1917,
the United States government took control of the trans-
portation systems of the country, including the Mobile &
Ohio Railroad Company and the Texas & Pacific Railway
Company; that the President of the United States appoint-
ed a Director General to control and operate said railroads,
and that the summons in the original garnishment directed
to the sheriff of Lauderdale county, Miss., was served by
said sheriff on an agent of the Director General, employed
by the Director General in the operation of the Mobile &
Ohio Railroad Company; that the Mobile & Ohio Railroad
Company was not in possession or control of, and was not
operating, its railroad, known as the Mobile & Ohio Rail-
road, in Mississippi or elsewhere, and had not been in such
control since December 28, 1917, and that the agent of the
Director General was not an agent in the employ of the
Mobile & Ohio Railroad Company. It was further set
forth in the said answer that the original answer herein
was intended to be and was in fact the answer of the Direc-
tor General of Railroads, and the indebtedness therein ad-
mitted to be due the Texas & Pacific Railway Company
was an indebtedness due by the Director General to the
Texas & Pacific Railway Company, and not an indebted-
ness due by the Mobile & Ohio Railroad Company, and that
the employees who filed said answer were employees of the
Director General, and not under the control of the Mobile
& Ohio Railroad Company as a corporation. It was further

alleged that after this original answer was filed, in order to avoid the confusion which existed in the minds of people, and especially of lawyers and courts, the Director General issued General Order No. 50, afterwards amended by his General Order No. 50a, providing that suits on causes of action arising out of the operation of railroads by the Director General and on contracts made by or on behalf of the Director General should be brought against the Director General of Railroads, and not against the railroad companies. It was further set forth in said answer that the Texas & Pacific Railway Company was on October 27, 1916, placed in the hands of receivers, who continued to operate it until the railroad and transportation systems were taken over by the United States government on December 28, 1917. It was further set forth in the answer that since the service of the last process the Mobile & Ohio Railroad Company, operated by the Director General, was not indebted to the Texas & Pacific Railway Company, and did not have any property of said Texas & Pacific Railway Company in its possession or under its control. It was further set forth that the suit against the Director General is a suit against the United States, and that the United States cannot be sued without its consent, and that the United States has not consented to be sued, either in its own name or through this respondent, in the manner and for the purposes for which the writ of garnishment was issued against the Mobile & Ohio Railroad Company.

On the former appeal the costs were adjudged against the Mobile & Ohio Railroad Company, which it declined to pay, and which are unpaid by it. The L. N. Dantzler Lumber Company was compelled to pay the costs in order to have the mandate issued to the court below. The last answer of the garnishee, the Mobile & Ohio Railroad Company, a corporation, was not filed by leave of court, nor was the original answer formally amended by leave of court, and on motion of the complainant said answers were stricken from the files by the court, and final judgment entered for the amount of money shown to be due the Texas

& Pacific Railway Company in the original answer, from which judgment this appeal was prosecuted.

Since the record has reached here a motion was made by the appellant, in the name of the Mobile & Ohio Railroad Company and in the name of the Director General, to substitute James C. Davis, Director General of Railroads and Agent of the United States under the Transportation Act, as appellant in the case, which motion on a former day of this term of the court was sustained, and the record now makes the Director General and Agent of the United States government the defendant in garnishment.

The original opinion (see *L. N. Dantzler Lumber Co. v. Texas & Pacific Railway Co.*, et al., 119 Miss. 328, 80 So. 770, 4 A. L. R. 1669, *supra,* held that the garnishment could issue for the purpose of acquiring jurisdiction to adjudicate the rights between the complainant and the defendant, and to render judgment against the Mobile & Ohio Railroad Company for the amount it was due the Texas & Pacific Railway Company as shown in the answer. It was held that the act of March 21, 1918, known as the Government Control Act, did not prevent the issuance of garnishment against a railroad company being operated by the government. It was further held in the original opinion that the garnishee could not set up a defense for the principal defendant, and we think it cannot set up now such defenses for the principal defendant. We think, furthermore, that the attempted defense that the Texas & Pacific Railway Company was being operated under a receivership at the time of the accrual of the cause of action cannot be made in this case, because the Act of March 21, 1918, provides that such suits originating before the Federal Control Act can be prosecuted in the same way as though the government had not taken over the control of the transportation systems. The provision of the act (section 3115 3-4j) :

"Action at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity

against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government"—carries with it the idea that such suits may be instituted against the carrier while under governmental control to the same extent and with the same effect as though the government had not taken over said transportation systems, so far as causes of action arising prior to government control are concerned.   The United States supreme court, in the case of *Missouri Pacific Railroad Co. and Walker D. Hines, Director General of Railroads* v. *H. A. F. Ault,* 254 U. S. —, 41 Sup. Ct. 593, 65 L. Ed. —, decided June 1, 1921, has interpreted this act in accordance with these views. In that case the supreme court said:

"The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President, except in so far as such rights or remedies might interfere with the needs of federal operation.   The provision applies equally to cases where suits against the carrier companies were pending in the courts on December 28, 1917, to cases where the cause of action arose before that date and the suit against the company which was filed after it, and to cases where both cause of action and suit had arisen or might arise during federal operation.   The government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers.   The situation was analogous to that which would exist if there were a general receivership of each transportation system.   Operation was to be continued as theretofore with the old personnel, subject to change by executive order.   The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the President for war purposes was not to be disturbed.   With that exception the substantial legal rights of persons having deal-

ings with the carriers were not to be affected by the change of control.

"This purpose Congress accomplished by providing that 'carriers while under federal control' should remain subject to all then existing laws and liabilities and that they might sue and be sued as thertofore. Here the term 'carriers' was used as it is understood in common speech, meaning the transportation systems as distinguished from the corporations owning or operating them. Congress had in section 1 section 3115 3-4a) declared that such was its meaning. The President took over the physical properties, the transportation systems, and placed them under a single directing head; but he took them over as entities and they were always dealt with as such. Bull. No. 4, p. 113. Each system was required to file its own tariffs. General Order No. 7, Bull. 4, p. 151. Each was required to take an inventory of its material and supplies. General Order No. 10, Id. p. 170. Each federal treasurer was to deal with the finances of a single system; his bank account was to be designated '(Name of Railroad), Federal Account.' General Order No. 37 Id. p. 313. Each of 165 systems was named individually in the order promulgating the wage awards of the Railroad Wage Commission. General Order No. 27, Id. pp. 198, 200. And throughout the orders and circulars there are many such expressions as 'two or more railroads or boat lines under federal control.' See General Order No. 11, Id. p. 170. It is this conception of a transportation system as an entity which dominates section 10 of the act. The systems are regarded much as ships are regarded in admiralty. They are dealt with as active responsible parties answerable for their own wrongs. But since levy or execution upon their property was precluded as inconsistent with the government's needs, the liability of the transportation system was to be enforced by allowing suit to be brought against whomever, as the party operating the same, was legally responsible under existing law, although it be the government .

"Thus, under section 10, if the cause of action arose prior to government control, suit might be instituted or continued to judgment against the company as though there had been no taking over by the government, save for the immunity of the physical property from levy and the power of the President to regulate suits in the public interest as by fixing the venue, or the time for trial. If the cause of action arose while the government was operating the system, the 'carrier while under federal control' was nevertheless to be liable and suable. This means, as a matter of law, that the government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts. See *Gracie* v. *Palmer,* 8 Wheat. 605, 632, 633, 5 L. Ed. 696. The title by which suit should be brought —the person who should be named as defendant—was not designated in the act. In the absence of explicit direction, it was perhaps natural that those wishing to sue the carrier should have named the company as defendant when they sought to hold the government. liable. It doubtless seemed, as suggested in *McNulta* v. *Lochridge,* 141 U. S. 327, 331, 332, 12 Sup. Ct. 11, 35 L. Ed. 796, (that suit should be brought against the transportation company, 'by name "in the hands of" or "in the possession of" a receiver,' or Director General. All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it be against the Director General by name."

Applying these principles to the case before us, we must conclude that the answer of the Director General in the court below should have been treated by the court as an application by the Director General to be substituted as the defendant instead of the Mobile & Ohio Railroad Company and substitution should have been made at that time, but an application to substitute in this court has been made and allowed, and as to the Director General it must be treated as though made by the court below and the answer of the Director General be treated in this suit as embracing both the amended answer and the original answer, as

the original answer was made by him and his agent in the name of the Mobile & Ohio Railroad Company, which was the only way it could be made at such time.

The above quotation from the United States supreme court in the Ault Case shows clearly that the Director General is to be treated as a Director General of each separate system of transportation, and that the separate transportation systems being operated by the Director General are separate parties within the meaning and purpose of the Federal Control Act construed by the supreme court. Therefore as the answer shows that the Mobile & Ohio Railroad Company's transportation system is a party indebted to the Texas & Pacific Railway Company as another party for the purpose of suits, the judgment of the court below awarding judgment against the Mobile & Ohio Railroad Company is, in effect, in view of the substitution made, a judgment againt the Director eneral of the Mobile & Ohio Railroad Company, and that the complainant is entitled to recover of the Director General of the Mobile & Ohio Railroad Company said sum. But that part of the order of the court which directed the money to be paid into court, to be disbursed by the court, is unauthorized and unwarranted, and will be modified to that extent. See section 4919, Code of 1906 (section 3195, Hemingway's Code). The Director General cannot be required to pay the money into court, but the complainant will have to secure the money in a manner provided by the Federal Control Act. Section 206 of the Transportation Act of 1920 (41 United States Statutes at Large, 461).

The judgment against the Mobile & Ohio Railroad Company as a corporation is erroneous, and its application to be discharged as the garnishee and defendant in the court below should have been sustained, and the judgment of the court as to the Mobile & Ohio Railroad Company, a corporation, will be reversed, and judgment entered here discharging the Mobile & Ohio Railroad Company, a corporation; it not being shown that the complainant would or could contest the truth of its answer as to property or funds

coming into its hands or under its control since March 1, 1920. The case above quoted from the United States supreme court is authority for the correctness of this view.

The judgment of the court below will be reversed, and a modified judgment against the Director General for the amount shown in the original answer will be entered in favor of the complainant, appellee here.

*Reversed, and modified judgment here.*