(99 South. 307)

**DAVIS, Director General, v. ZIMMERN.**
(1 Div. 221.)

(Supreme Court of Alabama. Feb. 16, 1924.)

**1. Carriers ☞154—Stipulation in bill of lading for computation of liability on basis of invoice price at time of shipment held valid.**

Stipulation in bill of lading providing for computation of carrier's liability on the basis of the invoice price to consignee at the place and time of shipment, including freight charges, if prepaid, unless a lower value had been agreed upon, or was determined by the classification or tariffs upon which the rate was based, regardless of whether the loss or damage had been caused by railroad's negligence, *held* valid, without special consideration moving from the carrier to the consignor, notwithstanding Code 1907, § 5514, making common carriers liable for market value at place of destination.

**2. Carriers ☞162—Plea based on stipulation limiting liability to invoice price required to negative wanton or willful misconduct, but not negligence.**

In action against railroad for loss of coal during transportation under bill of lading, providing for computation of liability on the basis of the invoice price, regardless of whether loss was due to negligence plea based on such stipulation was required to allege that the loss was not due to wanton or willful misconduct amounting to a conversion or an affirmative repudiation of the duty to carry and deliver, but was not required to negative negligence.

**3. Carriers ☞162—Restrictive stipulations in bill of lading introduced by plaintiff available to carrier without special plea.**

In an action against a carrier in which a bill of lading has been introduced in evidence by the plaintiff, restrictive stipulations therein contained are available to the carrier without a special plea.

**4. Carriers ☞51 — Carrier not estopped to show weight in fact, less than specified, where bill of lading makes weight "subject to correction."**

Where bill of lading makes weight "subject to correction," the carrier does not warrant the weight to be as specified and is not estopped from showing that the weight was in fact less than the weight specified.

**5. Evidence ☞7—Judicial notice taken of moisture in coal.**

The court judicially knows that Alabama coal, when mined, contains a substantial amount of water, that coal is carried on open cars, and may be exposed either to. rain or sun according to the weather and the season, and that a mass of coal of fine particles, with their innumerable interstices, will hold in suspension by adhesion and by capillary attraction a much larger quantity of water and for a longer time than would an equal mass of large lump coal.

**6. Carriers ☞132—Rule as to burden of proof in action against carrier for loss of goods, stated.**

In an action against a carrier, the burden is always on the plaintiff to show that a loss has occurred, and where loss is conceded the burden is on the carrier to show that the loss resulted from some cause or agency for which as carrier he is not legally responsible, or against which he has lawfully contracted.

**7. Carriers ☞132—Plaintiff suing railroad for loss of coal during transportation required to prove actual .loss notwithstanding decrease in weight.**

In an action for loss of coal during transportation, plaintiff had the burden of proving that there was an actual loss of coal, notwithstanding loss in weight of coal during transportation, which might have been due to evaporation of moisture during .transportation.

**8. Railroads ☞5½, New, vol. 6A Key-No. Series—Action against Director General regarded as one against him in relation only to operation of road on which damage occurred.**

An action against the Director General of Railroads must be regarded as one against him in relation only to his operation of the railroad on which the damage for which the action is brought occurred.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Action by Samuel Zimmern, doing business as Zimmern's Coal Company, against James C. Davis, Director General of Railroads. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

See, also, 209 Ala. 284, 96 South. 226.

The plaintiff states his case in 159 counts, and claims, in each, for the value of coal short from the cars respectively described.

The other facts sufficiently appear from the opinion.

Smiths, Young, Leigh & Johnston, of Mobile, for appellant.

It appearing that coal decreases in weight, due to the evaporation of moisture, the difference in weight at the point of origin and the point of destination does not necessarily indicate that the coal has been lost, and the plaintiff, failing to meet the burden of prov-

ing actual loss, defendant was entitled to peremptory instruction as to each count. Nye-Schneider-Fowler Co., v. C. & N. W., 106 Neb. 149, 182 N. W. 967; A. C. L. v. J. S. Carroll Mer. Co., 206 Ala. 320, 89 South. 509; So. Exp. Co. v. Saks, 160 Ala. 621, 49 South. 392; Cent. of Ga. v. Chicago Varnish Co., 169 Ala. 287, 53 South. 832; So. Ry. v. Renes, 192 Ala. 620, 68 South. 987; So. Ry. v. Levy, 144 Ala. 614, 39 South. 95; A. G. S. v. Comm. Co., 146 Ala. 388, 42 South. 406.

Harry T. Smith & Caffey, of Mobile, for appellee.

A bill of lading raises a prima facie presumption of the receipt of the goods, and the burden is upon the carrier to show the cause of failure to deliver. A. C. L. v. Rice, 169 Ala. 265, 52 South. 918, 29 L. R. A. (N. S.) 1214, Ann. Cas. 1912B, 389; So. Ry. v. Levy, 144 Ala. 614, 39 South. 95; Cooper v. Ga. Pac., 92 Ala. 329, 9 South, 159, 25 Am. St. Rep. 59; M. & E. Ry. v. Culver, 75 Ala. 587, 51 Am. Rep. 483; L. & N. v. Lynne, 196 Ala. 22, 71 South. 338; Code 1907, §§ 6132–6136; Jasper Trust Co. v. K. C. M. & B., 99 Ala. 419, 14 South. 546, 42 Am. St. Rep. 75. The measure of damages is fixed by the statute, and cannot be changed by the carrier, unless based on a valuable consideration. Code 1907, § 5514; So. Ry. v. Jones, 132 Ala. 437, 31 South. 501. A rule reducing damages is never available, where failure to deliver is negligent or intentional. So. Ry. v. Harris, 202 Ala. 265, 80 South. 101; So. Exp. Co. v. Owens, 146 Ala. 422, 41 South. 752, 8 L. R. A. (N. S.) 369, 119 Am. St. Rep. 41, 9 Ann. Cas. 1143; So. Exp. v. Gibbs, 155 Ala. 303, 46 South. 465, 18 L. R. A. (N. S.) 874, 130 Am. St. Rep. 24; Moulton v. T. & N., 128 Ala. 545, 29 South. 602. The jury is not bound to accept the opinion of a witness. Robinson v. Crotwell, 175 Ala. 195, 57 South. 23.

SOMERVILLE, J. The bills of lading under which the various shipments of coal were made to the plaintiff contained the following stipulations:

"Section 3. The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

Section 5514 of the Code provides that in cases of loss or destruction of, or injury to, property received for shipment, common carriers shall be liable to the owner "for the market value of such chattels, property or goods at the place of destination, at the time and in the condition they should have been delivered," with interest from that time. But it has been held that this statute does not prohibit contracts between the shipper and the carrier in derogation of that rule, if such contracts are otherwise valid. Ill. Cent. R. Co. v. Kilgore, 12 Ala. App. 358, 67 South. 707, affirmed in Ex parte Kilgore, 191 Ala. 671, 67 South. 1002.

In 10 Corp. Jur. 176, § 222, it is said:

"A regulation that the liability of the carrier in case of loss shall be limited to the invoice value of the goods is a reasonable regulation as to the damage to be recovered, and is valid (The Hadji, 18 Fed. 459; Pierce v. South. Pac. Co., 120 Cal. 156, 47 Pac. 874, 40 L. R. A. 350). So a stipulation that the liability for loss shall be measured by the value at the time and place of shipment is generally upheld, in the absence of a statute otherwise providing." Denver, etc., R. Co. v. Peterson, 59 Colo. 125, 129, 147 Pac. 663; Gratiot St. W'house Co. v. Missouri, etc., R. Co., 124 Mo. App. 545, 102 S. W. 11; Missouri, etc., R. Co. v. Walker, 27 Okl. 849, 113 Pac. 907; Matheson v. South R. Co., 79 S. C. 155, 157, 60 S. E. 437; Davis v. N. Y., etc., Ry. Co., 70 Minn. 37, 72 N. W. 823; Shellaberger, etc., Company v. Ill. Cent. R. Co., 212 Ill. App. 1.

Our own court is in line with this statement of the law. In the case of South. Ry. Co. v. Cofer, 149 Ala. 565, 568, 569, 43 South. 102, 103, it was said:

"The bills of lading each contain the following stipulation in respect to the rule for the admeasurement of damages in case of loss: 'The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the cotton at the place and time of shipment under this bill of lading, unless a lower value has been agreed on or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation.' It will be observed that no exemption from liability on account of negligence is involved in this stipulation, but the sole effect of it is to fix the place at which the price of the cotton shall be ascertained in respect to the measurement of damages. It has been held that such stipulations in bills of lading are reasonable and enforceable. This being true, the general rule which fixes the value of the goods at the place of delivery at the time at which they should have been delivered as the one for the admeasurement of damages was varied by the contract of the parties; and the court erred in the oral charge to the jury requiring the damages to be estimated with respect to the price of cotton at Selma, instead of Randolph, and in permitting evidence of the value of cotton at Selma.—L. & N. R. R. Co. v. Oden, 80 Ala. 38."

The decision there was that the stipulation, being reasonable and enforceable on its face, was applicable to loss from the carrier's negligence, and required no special consideration to support it.

In L. & N. R. R. Co. v. Oden, supra, there

is a dictum to the effect that the carrier cannot thus stipulate except as against the extraordinary risks with respect to which it is regarded as an insurer. But in the Cofer Case that suggested restriction is ignored, the decision resting on the proposition that the stipulation in question does not involve an exemption from liability on account of negligence.

This, we think, is the correct view, and is supported by many recent and well-considered cases.

The identical stipulation here in question was included in a uniform bill of lading recommended by the Interstate Commerce Commission in 1908. In re Bills of Lading, 14 Interst. Com. Com'n R. 346. And in Shaffer & Co. v. Chicago, etc., Ry. Co., 21 Interst. Com. Com'n R. 8, that tribunal held the stipulation valid though the loss was the result of the carrier's negligence.

Dealing with this identical stipulation, the following cases hold it as valid and enforceable against negligent loss or injury, and without any special consideration—as a reduced freight rate—to support it: Denver, etc., R. Co. v. Peterson Co., 59 Colo. 125, 147 Pac. 663; Gratiot St. W'house Co. v. M., K. & T. Ry. Co., 124 Mo. App. 545, 102 S. W. 11; Wallingford v. A. T. & S. F. Ry. Co., 101 Kan. 544, 167 Pac. 1136, L. R. A. 1918B, 716; Bowman-Kranz Lbr. Co. v. Bush, 104 Neb. 165, 176 N. W. 91; F. W. Brockman, etc., Co. v. Mo. Pac. Ry. Co., 195 Mo. App. 607, 188 S. W. 920; Coleman v. N. Y., etc., R. Co., 215 Mass. 45, 102 N. E. 92, 7 A. L. R. 1366; Grubbs v. A. C. L. R. R. Co., 101 S. C. 210, 85 S. E. 405; Inman v. S. A. L. R. Co. (C. C.) 159 Fed. 960.

In Wallingford v. Ry. Co., supra, the Kansas court said:

"In our opinion the measure of damages as fixed by the contract is reasonable, valid and controlling. The provision is intended to establish a rule for determining the value of the property in the event of loss and not, as plaintiffs contend, to limit or diminish the carrier's liability."

And in Coleman v. N. Y., etc., R. Co., supra, the Massachusetts court said:

"It was a reasonable contract to base the damages to be recovered in case of loss upon the genuine and honest invoice price between the parties. There is nothing contrary to public policy in such a contract."

In South. Ry. Co. v. Brewster, 9 Ala. App. 597, 603, 63 South. 790, the Court of Appeals followed South. Ry. Co. v. Cofer, 149 Ala. 568, 43 South. 102, supra, in holding that a stipulation in a bill of lading (identical with that in the Cofer Case) was valid and enforceable; and counsel for appellee, criticizing the Brewster Case, call attention to the later case of Ill. Cent. R. Co. v. Kilgore, 12 Ala. App. 358, 67 South. 707, wherein the Court of Appeals, speaking again through

211 ALA.—5

Thomas, J., held as valid a stipulation in a bill of lading for the carriage of cattle that—

"The liability * * * shall not exceed the actual cost at the point of shipment, and in no event exceed the above valuation [arbitrary values previously set out—$50 for each bull or ox, $30 for each cow, and $10 for each calf] for each animal"—the opinion noting that it appeared from the bill of lading "that the freight rate charged for the shipment was based on the valuation of the animals as stated."

But this criticism, and counsel's citation of other Alabama cases such as South. Ry. Co. v. Jones, 132 Ala. 439, 31 South. 501, overlooks a vital distinction in the terms of the stipulations involved. In the Cofer and Brewster Cases there was no arbitrary fixation of value, and the amount for which the carrier would become liable might just as well have been more than the value at the time and place for delivery, as less; whereas, in the Jones and Kilgore Cases, and in all the others, where a special consideration was held necessary to support the stipulation, arbitrary values were fixed in actual figures, beyond which the carrier's liability should not extend.

In South. Exp. Co. v. Owens, 146 Ala. 412, 41 South. 752, 8 L. R. A. (N. S.) 369, 119 Am. St. Rep. 41, Ann. Cas. 1143, in an opinion by Justice Denson, exhaustive consideration was given to the subject of contracts limiting the carrier's liability for negligent loss to a value arbitrarily fixed; and the previous decisions of the court were carefully reviewed, and the rule restated. But when the same learned justice wrote the opinion in the Cofer Case, supra, he made no reference whatever to the Owens Case, nor to any of the numerous cases reviewed therein—showing quite conclusively that he had clearly in mind the essential difference between the contracts dealt with in those cases.

[1] We conclude that, upon sound principle, as well as upon settled authority, the stipulation in the bills of lading here presented is valid and binding, and must be given effect according to its terms.

Amended plea 5 set up the stipulation in question as an answer "to so much of said count [each of them] as claims for more than $4.00 a ton," and avers that "the bona fide invoice price to the consignee was $4.00 a ton, and that the freight on said coal was not prepaid," and, further, that defendant "was not guilty of any negligence in the handling of said coal, nor was the loss due to the wanton or willful conduct of the defendant or any of its servants."

As amended, plea 5 was not subject to any of the grounds of demurrer interposed, and the demurrer was erroneously sustained.

[2] Under the principles stated above, it was not necessary for the plea to deny any negligence on the part of the defendant carrier with respect to the loss of the coal. It was necessary, however, to allege that the

loss was not due to the wanton or willful misconduct of the defendant amounting to a conversion of the coal, or an affirmative repudiation of the duty to carry and deliver. South. Ry. Co. v. Harris, 202 Ala. 263, 80 South. 101; Magnin v. Dinsmore, 70 N. Y. 410, 26 Am. Rep. 608; 10 Corp. Jur. 184 (§ 237).

[3] It should be noted in this connection that, where a bill of lading has been introduced in evidence by the plaintiff, restrictive stipulations therein contained are available to the carrier without a special plea. Davis v. Dawkins, 209 Ala. 45, 95 South. 188, citing Ex parte Kilgore, 191 Ala. 671, 67 South. 1002; I. C. R. R. Co. v. Kilgore, 12 Ala. App. 358, 67 South. 707. Hence, in the instant case, the issue as to the time and place for the estimation of value remained, notwithstanding the elimination of the special plea. The trial court recognized this, and denied to defendant the enforcement of the stipulation only because no special consideration was shown to have moved from the carrier to the consignor.

[4] The jury were properly instructed that where the bill of lading contains such a phrase as "weight subject to correction," the carrier does not warrant the weight to be as specified, and is not estopped from showing that the weight was in fact less than the weight specified. A. G. S. R. R. Co. v. Commonwealth, etc., Co., 146 Ala. 388, 401, 42 South. 406; 10 Corpus Jur. p. 196 (§ 254), citing the cases.

The chief points of controversy, as presented by the assignments of error, are with respect to the sufficiency of the proof of loss, and the effect of the theoretical evidence as to the loss of weight due to the evaporation of moisture held by the coal; and particularly as to the burden of proof with respect to the amount of actual shrinkage, if any, in the weights of these several cars of coal.

Appellant's contentions may be summarized as follows:

(1) The burden of proof is primarily upon the plaintiff to show that the carrier has received goods for carriage which it has failed to deliver. Proof of these two facts makes out a prima facie case of liability for loss.

(2) If the proof of loss rests solely upon the difference in the weight of the goods in mass when received by the carrier and when delivered to the consignee, and the evidence tends to show that the shortage in weight could be accounted for in whole or in part by the operation of natural causes, without the intervention of negligence or misconduct on the part of the carrier, then the burden is upon the plaintiff to show that the loss in fact resulted from negligence or misconduct and not from such natural causes.

[5] The evidence shows without dispute— a fact which, indeed, we judicially know— that Alabama coal when mined contains a substantial amount of water. Plaintiff testified that in his opinion the amount runs from 1½ to 3 per cent., which dries out between the mines and Mobile if it does not rain; but if it does rain this percentage of moisture is retained, or is even increased; and that washed steam coal should dry up considerably if it is wet, depending on how soon it is weighed after it is washed. He stated that only about one-third or one-fourth of the car shipments received by him over the Louisville & Nashville Railroad showed shortages in weight, the average of these shortages being about 6 per cent.

Defendant's witness Nesbitt, who qualified as an expert, having served for the preceding ten years as chief mine inspector for the state, testified that all Alabama coal contains natural moisture ranging from 1½ to 3½ per cent.; and that coal containing 3 per cent. of moisture when mined and shipped would lose about 2 per cent. of its weight in four or five days. He stated further that, when coal is first washed it contains about 20 per cent. of free moisture, of which half is lost in twelve hours, and a fourth of the remainder in twelve hours more; the moisture left after four or five days being about 2 per cent. of the coal.

Of the 152 cars of coal shown to have been short of the shipping weights when delivered at Mobile, one lost only $54/100$ of 1 per cent.; two lost a small fraction under 1 per cent.; seventeen lost between 1 and 2 per cent.; twenty, between 2 and 3 per cent.; seventeen, between 3 and 4 per cent.; twenty-six, between 4 and 6 per cent.; twenty-six, between 6 and 8 per cent.; twenty-seven, between 8 and 10 per cent.; five, between 12 and 14 per cent.; two, between 14 and 15; one 15½ per cent.; and one, 19½ per cent.

The witnesses stated—an obvious fact, of course—that the amount of moisture carried by coal when mined would vary according to the porosity of the particular coal, and that the shrinkage in weight would depend upon weather conditions. We know that coal is carried on open cars, and may be exposed either to rain or sun, according to the weather and the season. On a dry, hot summer day evaporation would be very rapid, while on a cloudy winter day, especially in a moist atmosphere, the evaporation would be, by comparison, very slow.

We know, also, that a mass of coal of fine particles, with their innumerable interstices, will hold in suspension, by adhesion and by capillary attraction, a much larger quantity of water, and for a longer time, than would an equal mass of large lump coal. For example (count 9), a car of lump coal of 109,200 pounds, delivered on September 26th, lost only 600 pounds, or one-half of 1 per cent.; while (count 49) a car of washed steam coal

of 112,200 pounds, delivered on October 18th, lost 22,000 pounds.

It is, of course, obviously true that, with respect to its water content whether held invisibly by absorption, or visibly by adhesion and capillary attraction, the weight of the coal when delivered to the carrier at the mines will be very materially affected by the time that elapses between its emergence from the mines, or its washing, and its weighing as shown by the bill of lading; and, also, its comparative weight at its destination will be affected by the length of time it is in transit.

There is, we believe, no real controversy as to the matters adverted to above. The basic inquiries, it seems to us, are: (1) Whether proof of loss in the weight of a commodity like coal, after it has been delivered to the carrier, is prima facie evidence of a corresponding loss of the substance of the coal; that is, of a failure to deliver an equivalent proportion of the bulk of the coal received by the carrier; (2) if so, is the prima facie effect of that proof overcome by evidence that such a loss in weight may occur without any loss of corpus, as a result of natural causes —as by the evaporation or drainage of water which formed a part of the original weight evidenced by the bill of lading?

The plaintiff offered no evidence of loss other than a loss of weight; and himself testified that Alabama coal has a large percentage of moisture in it—in run of the mine coal 2½ to 3 per cent.—"that dries out if it doesn't rain between here [Mobile] and the mines."

The defendant offered no evidence in denial or explanation of the loss of weight except the moisture content of the coal when mined, and after washing, and the normal percentage of evaporation in stated periods of time; nothing being shown as to weather conditions affecting the several shipments, nor as to the time allowed for evaporation or drainage after mining or washing and before the weighings by the carrier. With only a few exceptions (which showed very small percentages of loss), the shipments were of washed steam coal, which, if weighed immediately after washing, would contain 20 per cent. in weight of water; and, if weighed twelve hours after washing, would contain 10 per cent. in weight of water. Assuming the existence of weather conditions favorable to evaporation (conditions not at all abnormal for this part of the country), or assuming the deliveries of washed steam coal to the carrier, and weighings, before drainage had proceeded far, or before it was complete (a course of conduct apparently neither improper nor improbable), each and all of the losses of weight shown can be fully accounted for, and may as well have been the result of those causes and conditions as of loss of the corpus of the coal.

[6] The question is, we think, simply one of the burden of proof. The burden is, of course, always on the plaintiff to show that a loss has occurred; and, conceding the loss, the burden is always on the carrier to show that the loss resulted from some cause or agency for which as carrier he is not legally responsible, or against which he has lawfully contracted. L. & N. R. R. Co. v. Cowherd, 120 Ala. 51, 23 South. 793. But that rule does not determine the question here presented, which is simply upon the proof of the plaintiff's case.

[7] The only case in which the precise question seems to have been considered and determined is that of Nye-Schneider-Fowler Co. v. Chi. & N. W. Ry. Co., 106 Neb. 149, 182 N. W. 967, the reasoning and conclusion of which we fully approve. In that case the court said:

"It is the settled rule that, where a shipper shows a loss of the goods shipped, a prima facie case is made against the railroad company, by reason of the presumption that the loss resulted from some cause other than one which would exempt the company from liability (Nye-Schneider-Fowler Co. v. Chicago & N. W. R. Co., 105 Neb. 151, 179 N. W. 503); but before that presumption attaches the burden is on the shipper to show that a loss has occurred.

"If the grain has merely decreased in weight during shipment, and none has been lost from the car, the railroad company is not liable, and where from the evidence it appears that grain will shrink, in varying amounts, in weight during shipment and in handling owing to the loss of moisture content in the grain, it at once appears that the mere discrepancy in weights before and after shipment cannot alone be relied on to prove the actual and exact loss of grain from the car. In order, then, to ascertain the extent of actual loss of grain from the car, either the shipper or the railroad company must by evidence eliminate the shrinkage. This burden of proving the shrinkage, or of making reasonable allowance for such shrinkage, is upon the shipper, for the shipper must prove by a preponderance of the evidence, that grain has been lost from the car and the actual extent of such loss. * * *

"When, however, evidence is introduced intended to impeach the weighing process or the book record of the weights made, or tending to show that the discrepancy, or a part of such discrepancy, in weights can be accounted for by grain shrinkage, the burden remains upon the plaintiff to overcome that testimony and, by a preponderance of the evidence, maintain its case. Whenever it appears that the difference in weights alone is insufficient to prove the extent of loss of grain from the car, plaintiff must introduce such other proof as will show what the excess of loss of weight would be over shrinkage, in his particular case. Though the plaintiff may, at any stage in the proceedings, have made a prima facie case of loss, the mere fact that further evidence is introduced, either by plaintiff or defendant, tending to rebut that case, does not shift the burden of proof to the defendant and compel the defendant to prove by a preponderance of the evidence what the extent of the plaintiff's loss was. The proof of

that fact must always rest with the plaintiff. * * *

"In the case of Cardwell v. Union P. R. Co., 90 Kan. 707, 136 Pac. 244, it was held that the courts will take judicial notice of the natural shrinkage of grain in transit and that no proof is required of that fact.

"In the case here, positive evidence was introduced that shrinkage would take place in varying amounts, and when that was shown the burden was upon the plaintiff to show the extent of that shrinkage, or make due allowance for it in its claims, in order to prove what the extent of its actual loss of grain was."

We know of no principle of law which would require a carrier, receiving coal for transportation, to attempt to estimate the amount of moisture, free or otherwise, carried by the coal at the time it is weighed; or to hold the coal, before weighing, until drainage or evaporation is complete.

That, it seems to us, is a matter for adjustment between consignor and consignee. And we may observe, in passing, it would seem that the question of the carrier's retention of the full amount of freight charged and collected on the basis of weight, when that weight is substantially reduced by loss of water in transit, is one to be considered in the fixing of the rates for carriage.

[8] The action of the trial court in giving and refusing instructions was not in accordance with the principles above stated, and must be pronounced erroneous. In so far as it is material to the issues of the case, the action must be regarded as one against the Director General in relation only to his operation of the Louisville & Nashville Railroad Company. The complaint so declares, and the Supreme Court of the United States has so determined. Mo. Pac. R. R. Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087. Following that case, the Mississippi court has expressly so ruled. Davis, Director Gen., etc., v. Dantzler Lbr. Co., 126 Miss. 812, 89 South. 148.

For the reasons stated above, the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.