J. F. ANDERSON LBR. CO., Respondent, v. CHICAGO & N. W. RY. CO., Appellant.

(226 N. W. 273.)

(File No. 6430. Opinion filed June 27, 1929.)

306

A. K. *Gardner,* of Huron, and *L. M. Simons,* of Belle Fourche, for Appellant.

*Buchholz & Richards,* of Newell, and *J. W. Malvin,* of Belle Fourche, for Respondent.

MISER, C. This action was commenced by respondent, a retail coal dealer at Newell, S. D., to recover for an alleged loss of coal in seven shipments, from September 1920, to March, 1922, none of which originated on the line of the appellant carrier. The trial was had in May, 1926. The trial court made findings of fact in favor of respondent and entered judgment thereon as to five of the shipments. The aggregate amount of soft coal shipped was 446,300 pounds. The aggregate shortage claimed was 18,020 pounds, averaging about 4 per cent of the weight of the coal shipped; although, in one shipment, the shortage in weight exceeded 5 per cent. The weight of the coal at the points of origin in Colorado and Wyoming was taken from the freight bills paid by respondent's agent at Newell. There was no proof of any other weighing prior to unloading at Newell, the point of destination. The only witness who testified as to the weights at Newell was the resident agent and manager for respondent company. He testified that he could not remember whether he examined any of the cars of coal before they were unloaded or not; that he took no

personal part in unloading the car; that he had different men haul the coal and paid them so much a ton for hauling it from the car on the track up to the yards about a mile distant; that, when one of the haulers got up to the yard, he would have him drive on the wagon scales and the manager would weigh the load; that he did not watch the men that were hauling, to see where they went or how many loads they got. There was no testimony as to the number of draymen, who they were, the time used to unload each car, nor that they hauled all the coal unloaded to the scales. The manager also testified that coal loses some weight by evaporation of the moisture in it; that whether it will lose from 3 to 5 per cent depends on the moisture content of the coal, the condition of the weather, and the length of time exposed to the air. Some of this coal was shipped in closed cars; most of it in open cars and gondolas.

■ Respondent relies on Dunlap v. Gt. Nor. Ry. Co., 34 S. D. 320, 148 N. W. 529, Ann. Cas. 1916D, 805, to support its contention that the burden was on the terminal carrier to show that the loss did not result from any cause for which it was responsible. The court held in that case that, where property has been placed with a common carrier for transportation in good order, that condition is presumed to exist until the contrary is shown, and where transported by successive carriers and delivered to the consignee in a damaged condition, the property will be presumed to have received the injury while in the possession of the last carrier. There is nothing in the Dunlap Case which relieves the shipper of the burden of showing the condition or quantity of goods delivered at the destination. Having shown bad condition or loss, the shipper has the benefit of a presumption that the terminal carrier caused it, which places on the terminal carrier the burden of showing that the goods came to its possession in damaged condition. But this rule does not relieve the shipper of the burden of proving the fact of injury. The reason which underlies the rule in the Dunlap Case, as therein stated, is to protect shippers "from the necessity of making proof, which, under the circumstances, would be almost, if not entirely, impossible for them to make; they having no jurisdiction or observation of the goods during the transit, while the care and custody and observation of the goods have been in the hands of the respective carriers."

■ In the case at bar, there was no evidence that the cars in which the coal was transported were not in good condition; nor was there any evidence of leakage or removal of coal in transit. Respondent averred that there was a shortage in weight at Newell. The weight of that coal when received by respondent, especially after being unloaded, was not a fact peculiarly within the knowledge of the carrier. Certainly the fact that every dray load removed from the car was weighed over respondent's scales a mile away was not peculiarly within the knowledge of the carrier. To stretch the rule in the Dunlap Case so as to relieve respondent of the burden of showing the weight of the coal at Newell would be to extend that rule beyond the bounds of fairness. If, as a matter of fact, there was a shortage in this coal greater than could be accounted for by the evaporation in transit, Nye-Schneider-Fowler Co. v. C. & N. W. Ry. Co., 106 Neb. 149, 182 N. W. 967, it is no more reasonable to assume that the coal, if any, unaccounted for, disappeared before arrival at Newell than it is to assume that, although it reached Newell, it never crossed respondent's scales. The confidence of respondent's manager in the honesty of the draymen does not supply the defects in proof. Even with dishonesty of employees eliminated, there still remains the elements of error in delivery, unloading without weighing, and theft by those not employees. Assuming the sufficiency of the proof, supported by the presumption of the Dunlap Case, that appellant received for transportation 446,300 pounds of coal, and disregarding entirely the factor of loss of weight by evaporation, there is yet a missing link in the proof which it was respondent's burden to supply. This is that there was a shortage of 18,020 pounds in the coal delivered to respondent at Newell. Silverman v. Cleveland, C., C. & St. L. Ry. Co. (Sup.) 157 N. Y. S. 876; Davis v. Zimmern, 211 Ala. 63, 99 So. 307; Nye-Schneider-Fowler Co. v. Chicago & N. W. Ry. Co., 106 Neb. 149, 182 N. W. 967.

The judgment and order appealed from should be and are reversed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.