SMITH v. BABCOCK & WILCOX CO. et al.

MORTON v. SAME.

(District Court, N. D. Ohio, E. D.    October 3, 1919.)

Nos. 9987, 9938.

COURTS ⬤⇒314—JURISDICTION OF ACTION AGAINST RAILROAD UNDER FEDERAL
CONTROL.

Under Federal Control Act, § 10 (Comp. St. 1918, § 3115¾j), an action
to enforce a liability incurred in the operation of a railroad while under
federal control may be maintained in such courts, and only such courts,
as would have had jurisdiction in the absence of federal control, and the
citizenship of the railroad company, and not of the Director-General, de-
termines the jurisdiction of a federal court.

At Law. Actions by Thomas H. Smith, administrator, and by W.
A. Morton, administrator, against the Babcock & Wilcox Company
and Walker D. Hines, Director-General of Railroads, operating the
Akron & Barberton Belt Railroad Company. On motions to dismiss
for want of jurisdiction. Motions sustained.

Newcomb, Newcomb, Nord & Chapman, of Cleveland, Ohio, for
plaintiffs.

Allen, Waters, Young & Andress, of Akron, Ohio, for defendants.

WESTENHAVER, District Judge. Defendants, appearing spe-
cially for the purpose, move to dismiss for want of jurisdiction. The
amended petitions show that the plaintiffs are citizens and residents
of the state of Ohio; that the defendant the Babcock & Wilcox Com-
pany is a citizen and resident of some state other than Ohio; that
Walker D. Hines, the Director-General of Railroads and operating
as such the Akron & Barberton Railroad lines, is a citizen of some
state other than Ohio. The citizenship of the railroad company, the
owner of the lines, is not stated, but in argument it was said without
contradiction that it was a corporation organized and existing under
the laws of the state of Ohio, and is therefore a citizen of the state
of Ohio. In view of the settled rule that all facts necessary to give
jurisdiction must affirmatively appear, it follows that for purposes
of this motion it must be assumed that the railroad company is a
citizen also of the state of Ohio.

Counsel for plaintiffs urge that the personal residence and citizen-
ship of Walker D. Hines as an individual is controlling. In support
of this contention is cited the well-known line of cases holding that
the personal citizenship of an administrator or trustee is to be taken
as determining the diversity of citizenship, and not the citizenship and
residence of the decedent or beneficiary. This contention, if tenable,
proves too much. In that event Walker D. Hines could not be sued
at all in Ohio in these or similar actions, for the reason that process
could not be served on him. When the defendant is a person, and

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not a corporation, service must be made on him personally or by leaving a copy at his usual place of residence. Gen. Code Ohio, § 11286. It is only when the defendant is a railroad corporation that service may be had upon a regular ticket or freight agent, or, if there be no such agent, then upon a conductor in charge of any train or car. Gen. Code, § 11288. It is only when the defendant is a foreign corporation that service may be made upon a managing agent within the state. Gen. Code, § 11290. It follows that, if Walker D. Hines is to be regarded as sustaining the same relation to the cause of action and to the railroad company defendant as an administrator or trustee, no provision is made by law for serving process in actions upon him in Ohio. Even the remedy by attachment, which is permitted against other nonresident defendants, would not be applicable, for the reason that section 10, Act March 21, 1918, c. 25, 40 Stat. 456 (Comp. St. 1918, § 3115¾j), known as the Federal Control Act, prohibits the levying of any process, mesne or final, upon any property under federal control. Furthermore, attachment is not a means whereby original jurisdiction can be obtained in actions brought in federal courts. Cleveland & Western Coal Co. v. J. H. Hillman & Sons Co. (D. C.) 245 Fed. 200.

Counsel for defendant Walker D. Hines, Director-General, urges that this action is essentially one against the United States, and that, inasmuch as the United States is not a citizen of any state, the requisite diversity of citizenship does not exist. In support of this contention is cited Northern Pacific Railroad Co. v. State of North Dakota (United States Supreme Court, decided June 2, 1919) 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. ——. Fully sustaining this contention is the decision of the Supreme Judicial Court of Massachusetts in Public Service Commission v. New England Telegraph & Telephone Co., 122 N. E. 567, affirmed United States Supreme Court, June 2, 1919, MacLeod v. New England Tel. & Tel. Co., 250 U. S. 195, 39 Sup. Ct. 511, 63 L. Ed. ——. The liability for injuries resulting from negligent operation during federal control is undoubtedly a liability of the United States, and not of the owners of the railroad lines, and is to be paid from the operating revenue and revolving fund provided by that act. See Haubert v. Baltimore & Ohio Railroad Co. et al., 259 Fed. 361, decided by me September 3, 1919. The solution, however, of the question now presented, does not depend upon this proposition of law. Consequently it is deemed unnecessary to consider carefully what the relationship of the United States is to the present action.

The solution of the question depends, in my opinion, upon the proper interpretation and construction of section 10 of the Federal Control Act. The provisions of this section are familiar to counsel and need not be quoted. The first sentence of the section makes all carriers while in federal control subject to all laws and liabilities as common carriers, whether arising under state or federal laws or common law, except so far as inconsistent with the provisions of that act, or any other act applicable to federal control, or with any order of the President. This means that lines of railway, while being

operated under federal control and by a Director-General of Railroads, are subject to liability for injury due to a third person precisely to the same extent as if they were not under such federal control or operation. The second sentence provides that actions at law or suits in equity may be brought by or against such carriers and judgments rendered as now provided by law. This gives the consent of the United States to the extent that it is a party in interest to be sued in any court in the same manner in which the carrier itself may be sued prior to or except for federal control. By certain orders of the Director-General this consent to be sued has been regulated to the extent at least of permitting the actions to be brought and prosecuted in the name of the Director-General. He represents for purposes of action such interest as the United States has in the operation of railway lines during federal control.

This section further provides that no defense shall be made in any actions at law or in equity to enforce any liability on the ground that the carrier is an instrumentality or agency of the federal government, and that no such carrier shall be entitled to transfer any action brought by or against it to any federal court. Obviously this means that right to sue in or remove to the federal court is not restricted or enlarged in consequence of federal control. Construing these provisions together with the entire act, it seems obvious that Congress intended to interfere as little as could be avoided with the situation existing at the time the railroads were taken over, and that the rights and remedies of all persons should be preserved and might be enforced with a minimum of interference with pre-existing rights and remedies. Assuming the existence of a liability it seems evident that it was intended parties should have the right to assert the same in any court, and in the same manner as it might previously have been asserted. This intent extends, not merely to the method of bringing the parties into court, but to the jurisdiction of the court. Briefly, the situation is as if Congress had said to these respective plaintiffs:

It is true the Akron & Barberton Belt Line Railroad Company is to be taken over and operated by a federal agency, but the liabilities incurred in operating and your rights and remedies in asserting the same shall be and remain just as if no such federal control existed. You may proceed with an action in the same courts and in the same manner as if no federal control existed; but you must not seize under process any property in possession of federal control, but depend for payment upon the provision made by Congress.

The fact that the liability arising during federal control is not a liability of the owners of the railway lines, but of the United States, requires for convenience that the party to be sued should be its Director-General; but at the same time it seems manifest that no change in the manner or method of asserting that liability was intended or has been made. Properly construed, section 10 means that any court which would have had jurisdiction of plaintiff's action against the Babcock & Wilcox Company and the Akron & Barberton Belt Railroad Company prior to federal control will have jurisdiction under

federal control, and that no court which would not have had juris-
diction over plaintiff's cause of action, except for federal control,
does not have it in consequence of federal control. To hold otherwise
would be manifestly inconsistent with the general tenor and effect of
the act itself.

The motions to dismiss will be sustained.