SEAVER v. HINES, Director General of Railroads.

(District Court, D. New Hampshire. November 1, 1919.)

No. 274.

Courts ⟨Key⟩274—FEDERAL COURT; JURISDICTION OF ACTION AGAINST DIRECTOR GENERAL.

Neither the Federal Control Act (Comp. St. 1918, §§ 3115¾a–3115¾p), nor any executive regulation thereunder enlarges the jurisdiction of a federal court, so as to give it jurisdiction of an action against the Director General on a cause arising in the operation of a railroad entirely foreign to the district, by service on a federal agent employed in operation of a different road within the district.

At Law. Action by George H. Seaver against W. D. Hines, Director General of Railroads. On motion to dismiss. Motion granted.

Robert W. Upton and John M. Stark, both of Concord, N. H., for plaintiff.

Streeter, Demond, Woodworth & Sulloway, of Concord, N. H., for defendant.

ALDRICH, District Judge. In this case there is a plea and a motion to dismiss on the ground of lack of jurisdiction. The motion was granted, and the question raised is being considered upon rehearing. The plea and motion are grounded upon the idea that there was no proper service.

The plaintiff relies upon a cause of action alleged to have been created in the government operation of the Rutland Railroad, a railroad foreign to the district of New Hampshire, and at a place outside this district, namely, Malone, in the state of New York.

In the briefs counsel have cited the cases of Wainwright v. Pennsylvania Railroad (D. C.) 253 Fed. 459, Freisen v. Chicago, R. I. & P. Ry. Co. (D. C.) 254 Fed. 875, and Rutherford v. Union Pacific Railroad (D. C.) 254 Fed. 880.

But it must be observed that the first two of these cases deal with the question as to the authority of the Director General of Railroads to order that all suits must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action, or in the county or district where the cause of action arose, it being a controverted question whether the Director General of Railroads could limit rights or remedies existing prior to the act of Congress (Act March 21, 1918, c. 25, 40 Stat. 451 [Comp. St. 1918, §§ 3115¾a–3115¾p]) providing for federal control of railroads. But we have no occasion to deal with any such question here, because the plaintiff, it must be assumed, resided within this district at the time of the cause of action, and at the time the suit was brought. And the third case cited, that of Rutherford v. Union Pacific Railroad, relates to the authority of the order or regulation which requires all suits to be brought against the Director General, but no such question as that is raised here, and therefore we have no occasion to consider it.

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

If I understand the position of the plaintiff correctly, the question here is whether the government management and control of the railroads of the country as a war measure, and under the war powers of Congress, so far consolidated or merged the various railroads of the United States into one system as to create a situation which would make it reasonable and proper to assume jurisdiction over a cause of action, and a railroad management, foreign to the district where the suit is sought to be prosecuted, under a kind of service which would not have been effective to that end prior to the assumption of federal control.

It is understood that prior to federal control jurisdiction might be created in a given district over a foreign corporation, and an outside cause of action, through service based upon an attachment of the property of the railroad, or through trustee process, within the jurisdiction. It does not seem at all apparent, or even probable, that the government, through the act of Congress or the orders of the Director General, intended to enlarge the modes of service or the rights in respect to the venue for civil procedure. Indeed, in the act of Congress (section 10) it is provided that actions at law or suits in equity may be brought and judgment rendered "as now provided by law." And likewise the order of the Director General (50a) provides that:

"Service of process in any action, suit, or proceeding may be made upon operating officials operating for the Director General of Railroads, the railroad or other carrier in respect of which the cause of action arises in the same way as service was heretofore made upon like operating officials for such railroad or other carrier company."

Thus it would seem that in this respect the idea was to leave the rights, remedies, and the methods of procedure to go along according to the general course of law and equity existing prior to federal control, with the limitations that no process shall be levied against property under federal control (section 10, Act of Congress March 21, 1918), and that suits shall be instituted against the Director General.

But the position is taken by the plaintiff that, since the federal control of railroad transportation systems as effectuated by the orders of the Director General, causes of action are not prosecuted against the individual carriers, but against the Director General as the representative of all the systems operated by the government.

This position is true in a fictional sense, but not in any general or substantial sense. It is only to be accepted in an exceptional sense. The order requiring suits to be brought against the Director General, and this without regard to the question whether the Director General had authority to make it, was based upon the idea that, while government control exists as a war measure, the government is, in a certain sense, the owner of funds resulting from the operation of the lines, or at least in control of them, to be used to pay operating expenses and liabilities, subject ultimately to reasonable adjustment as between the government and the owners, and is responsible for the management of the various railroads, and therefore, as a matter of convenience and of reasonable precaution, might so far regulate court procedure as to require actions to be brought against the Director General. But this, so far as concerns

procedure, aside from the name, is, in a very large sense, nominal, and it is against reason to contend that the purpose of such an order was, in a substantial sense, to consolidate and merge the various individual interests, or, in other words, the various individual railroads of the country into a single system, to the end that new remedies should be had and jurisdiction created upon a kind of service not theretofore known in legal or equitable procedure.

The service in this case was upon the "ticket agent of the within-named defendant at the station of the Boston & Maine Railroad at Concord, New Hampshire," and on "William R. Mooney, division superintendent of the Southern division of the Boston & Maine Railroad, one of the railroads now under the operation and control of the within-named defendant and agent of the within-named defendant having charge of the property of the within-named defendant in said state and district of New Hampshire."

All the agencies and the properties referred to in the return upon the writ are in every substantial and essential sense, so far as judicial procedure goes, the agencies and properties of the Boston & Maine Railroad, because there has been no substantial or permanent taking over of the properties, and as such they are quite independent of the Rutland Railroad of Vermont and New York, unless affected by the act of Congress, the order of the President, or the orders and regulations of the Director General.

It would hardly be contended, it is supposed, that such a service prior to government control of the railroads would have been even a hint in the direction of creating jurisdiction over the rights of a foreign railroad like that of the Rutland, and I do not think there is anything in the act of Congress, or the executive orders in question, or in the character of the management and control which could reasonably be accepted as fairly intended to enlarge the modes of procedure, or to increase rights and remedies in respect to jurisdiction beyond those common to law and equity proceedings existing prior to government management based upon war necessity.

While as a matter of form, and as a matter of convenience and precaution, it may, perhaps, be well enough to assume that the requirement that all proceedings against the railroads under government control shall, in name, be drawn against the Director General, is a reasonable one, it would be quite another and a different thing to say that, by virtue of this formal and measurably fictional requirement, all individual railroads have lost their identity, and that their interests have been so far consolidated and merged into a system with a single entity, that service, for instance, upon a station agent of a railroad in the extreme Eastern district of Maine would be service upon a railroad in the extreme Western district of California.

Viewing the service as inadequate, it follows that the case must be dismissed.

Dismissed.