**ST. LOUIS, B. & M. RY. CO. v. McLEAN et al.   (No. 437–3814.)**

(Commission of Appeals of Texas, Section A. June 20, 1923.)

1. **Railroads ⬤⟿5½, New, vol. 6A Key-No. Series—Director General distinctly a different person in operation of railroads.**

Under Federal Control Act, § 10 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j), supplemented by General Order No. 50, the Director General of Railroads is distinctly a different person in the operation of each railroad under his control, notwithstanding unity of operation, and he may assert different defenses in an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for the death of an employé of a railway company caused by the negligence of employés of another company.

2. **Negligence ⬤⟿101—Contributory negligence ground for diminution of damages under federal Employers' Liability Act.**

Under federal Employers' Liability Act, § 3 (U. S. Comp. St. § 8659), directing diminution of damages for injuries to an employé in proportion to the contributory negligence attributable to him, his negligence need not be the sole proximate cause of the injury to authorize diminution, but must be a contributing cause.

3. **Evidence ⬤⟿535—Witness should be required to qualify himself before stating opinion as to speed of train.**

A witness should be required to qualify himself under the proper rules, before being permitted to state his opinion or conclusion as to the speed of a train at the time of a collision.

4. **Evidence ⬤⟿506—Refusal to permit expert trainmen to state conclusions they would have reached on failing to find usual signals held not error.**

In an action for the death of a railroad conductor, when his train, while stopping or immediately after stopping at a station was run into from the rear by another train, where the rules as to signals required to be displayed under such conditions were in evidence, and those in charge of the trains were permitted to interpret and testify to the application of such rules, the court did not err in refusing to permit defendant's witnesses, who were expert trainmen, to state what conclusions or inferences they would have reached on failing to find the usual signals.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Hester McLean, individually and as administratrix of the estate of W. F. McLean, deceased, against the St. Louis, Brownsville & Mexico Railway Company, and the Texas Mexican Railway Company, and W. G. McAdoo, Director General of Railroads, for whom J. C. Davis, Agent of the United States Railroad Administration, was substituted. From a judgment (241 S. W. 1072), affirming a judgment against defendant Davis, he brings error. Reversed and remanded.

E. H. Crenshaw, Jr., of Kingsville, and J. D. Todd, of Corpus Christi, for plaintiff in error Davis, Agent in the operation of the St. Louis, B. & M. Ry. Co.

H. R. Sutherland, of Corpus Christi, and Dodson & Smith, of Laredo, for plaintiff in error Davis, Agent in the operation of the Texas Mexican Ry.

Boone, Pope & Savage, of Corpus Christi, for defendants in error.

GERMAN, J. On January 25, 1918, the railroad lines of the St. Louis, Brownsville & Mexico Railway Company and the Texas Mexican Railway Company were both under federal control, and were being operated by W. G. McAdoo, Director General of Railroads. The Texas Mexican Railway Company owned a line of railroad from Corpus Christi to Robstown, over which its passenger trains were operated, and under some kind of agreement the passenger trains of the St. Louis, Brownsville & Mexico Railway Company were operated over this line between the same points. On that date W. F. McLean was conductor in charge of a passenger train of the St. Louis, Brownsville & Mexico Railway Company. About 7:20 a. m. of that day, while in the act of stopping, or immediately after having stopped, at the station of Clarkwood, the train on which McLean was conductor was run into from the rear by a passenger train of the Texas Mexican Railway Company, and McLean was instantly killed. He left surviving him his widow, Hester McLean, a minor daughter, Helen Josephine McLean, and his parents, L. B. McLean and wife.

December 26, 1918, Mrs. Hester McLean, individually and as administratrix of the estate of W. F. McLean, for the benefit of herself and her minor child, filed suit against the two railway companies and the Director General of Railroads for damages. The case, as now presented here, was tried on plaintiff's fourth amended original petition, in which J. C. Davis, Agent of the United States Railroad Administration, took the place of the former Director General of Railroads. L. B. McLean and wife were made defendants. It was alleged that at the time the said McLean was killed he was engaged in interstate commerce.

Numerous acts of negligence were alleged on the part of the St. Louis, Brownsville & Mexico Railway Company, and also on the part of the Texas Mexican Railway Company, some acts as to one and some as to the other, and on the part of the Director General of Railroads in the operation of both trains.

Plaintiff in error James C. Davis filed two answers. As Director General and Agent in respect of the operation of the St. Louis, Brownsville & Mexico Railroad he pleaded the general issue and contributory negligence on the part of McLean, claimed to be

the sole cause of the accident. As Director General and Agent in respect of the operation of the Texas Mexican Railway he alleged that McLean was solely in the employ of the Director General in respect of the operation of the St. Louis, Brownsville & Mexico Railroad, and that the relation of master and servant did not exist between him and the Director General in respect of the operation of the Texas Mexican Railway; that McLean was guilty of contributory negligence, which was a complete bar to any recovery. On motion the two railroad companies were dismissed from the suit. A trial before a jury on special issues resulted in a judgment against plaintiff in error in the sum of $29,750, which was prorated between Mrs. McLean, the minor daughter, and L. B. McLean and wife. This judgment was affirmed by the Court of Civil Appeals for the Fourth District. 241 S. W. 1072.

It appears that from the beginning defendant in error has proceeded upon the theory that the Director General of Railroads held the position of directing head of all railroads and railway systems, considered as one entity, and as such could be sued in his general capacity as a representative of the government, without respect to any particular railroad or carrier operated by him; and that all employés on the various railroads were his employés and related to each other and to him as common servants of a common master. To put the matter more concretely: It is her contention that the Director General of Railroads in his operation of the Texas Mexican Railway sustained exactly the same relation to McLean as he did in his operation of the St. Louis, Brownsville & Mexico Railroad; that there being no recognition of separate railroads or carriers in the matter of operation, liability was therefore fixed by the relation of McLean to the Director General as the directing head of all railroads, and not by the relation sustained by the Director General to either the St. Louis, Brownsville & Mexico Railroad or the Texas Mexican Railway.

Plaintiff in error has been equally insistent in his contention, that the acts of Congress authorizing federal control of railroads fixed the legal liability of the Director General in the operations of railroads as separate entities, the same as before federal control; and the Director General in respect of the operation of one particular railroad was a different party from the Director General in respect of the operation of another railroad, so far as liability growing out of operations was concerned. In other words, it is his contention that the Director General, in respect of the operation of the St. Louis, Brownsville & Mexico Railroad, sustained to McLean an entirely different relation than that sustained by the Director General in respect of the operation of the Texas Mexican Railway.

This presents the question of great importance in the case. Its proper determination will not only control the result of this appeal, but will have much to do with the rights of the parties on another trial.

From the pleadings of defendant in error it is apparent that she is seeking to recover under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), upon the theory that there was no distinction between the employés in charge of the different trains, but that they were each and all alike servants of the Director General. If the contention of plaintiff in error is correct, then she would have no right to proceed under the Employers' Liability Act against the Director General in respect of the operation of the Texas Mexican Railway, but only on the basis of negligence; but she could proceed under the Employers' Liability Act against the Director General in respect of the operation of the St. Louis, Brownsville & Mexico Railroad. Under the first proceeding, contributory negligence would be a complete bar to a recovery, but under the second it would only result in diminishing the damages, in the event of a recovery. The question therefore is of controlling importance, and especially in view of the fact that the trial court submitted to the jury the following special issue:

"Was the Director General of Railroads, through his servants and employés, guilty of any of the acts of negligence in the operations of the trains as charged in plaintiff's fourth amended original petition?"

In our judgment the Supreme Court of the United States in the case of Missouri Pacific R. Co. v. Ault, 256 U. S. 554, 561, 41 Sup. Ct. 593, 65 L. Ed. 1087, has determined this precise question; but, as is frequently the case, counsel for both parties insist that it is to be construed as favorable to each of their contentions. We do not deem it necessary to fully review the Acts of Congress, the orders of the President, and the orders of the Director General, establishing and relating to federal control of railroads, but believe the quotations we are making from the case just referred to and other cases will sufficiently explain the purpose of the act and make clear the conclusion we have reached.

Section 10 of the Federal Control Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j), provides:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made

thereto upon the ground that the carrier is an instrumentality or agency of the federal government. * * * But no process, mesne or final, shall be levied against any property under such federal control."

By General Order No. 50 of the Director General, dated October 28, 1918, it is further provided:

"It is therefore ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claims for death or injury to person or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suits, or proceedings but for federal control might have been brought against the carrier company shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise."

Commenting on section 10 of the Control Act, the Supreme Court, in the case above cited, used this language:

"The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President, except in so far as such rights or remedies might interfere with the needs of federal operation. The provision applies equally to cases where suits against the carrier companies were pending in the courts on December 28, 1917; to cases where the cause of action arose before that date and the suit against the company was filed after it; and to cases where both cause of action and suit had arisen or might arise during federal operation. The government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. Operation was to be continued as theretofore with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the President for war purposes was not to be disturbed. With that exception, the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control. "This purpose Congress accomplished by providing that 'carriers while under federal control' should remain subject to all then-existing laws and liabilities and that they might sue and be sued as theretofore. Here the term 'carriers' was used as it is understood in common speech; meaning the transportation systems as distinguished from the corporations owning or operating them. Congress had in section 1 declared that such was its meaning. The President took over the physical properties, the transportation systems, and placed them under a single directing head; but he took them over as entities and they were always dealt with as

such. Bull. No. 4, p. 113. Each system was required to file its own tariffs. General Order No. 7, Bull. 4, p. 151. Each was required to take an inventory of its materials and supplies. General Order No. 10, Id. p. 170. Each federal treasurer was to deal with the finances of a single system; his bank account was to be designated '(Name of Railroad), Federal Account.' General Order No. 37, Id. p. 313. Each of 165 systems was named individually in the order promulgating the wage awards of the Railroad Wage Commission. General Order No. 27, Id. pp. 198, 200. And throughout the orders and circulars there are many such expressions as 'two or more railroads or boat lines under federal control.' See General Order No. 11, Id. p. 170. It is this conception of a transportation system as an entity which dominates § 10 of the act. The systems are regarded much as ships are regarded in admiralty. They are dealt with as active responsible parties answerable for their own wrongs. But since levy or execution upon their property was precluded as inconsistent with the government's needs, the liability of the transportation system was to be enforced by allowing suit to be brought against whoever, as the party operating the same, was legally responsible under existing law, although it were the government."

The conclusion deduced from this decision and numerous other decisions is: That while the control and power over all railroads and transportation systems by the government under federal control was supreme and exclusive, so far as management and operation to the accomplishment of the purpose of the government was concerned, yet this control did not effect a consolidation of the individual companies, so far as their respective legal rights and liabilities were concerned; but each and all remained separate and distinct entities, and liability of the Director General could not be maintained because of his position as directing and controlling head of all railroads, but could be maintained only when it grew out of the possession, use, control, or operation of some particular railroad or transportation system; and it was necessary for him to be sued in his capacity as Director General in respect to such particular railroad system. Davis, Agent, v. Lumber Co., 43 Sup. Ct. 349, 67 L. Ed. 387; reviewing judgment Supreme Court of Mississippi, 126 Miss. 812, 89 South. 148; Payne, Agent, v. Coleman (Tex. Civ. App.) 232 S. W. 537; Granquist v. Ry. Co. (Minn.) 193 N. W. 126; Bostwick v. Director General, 220 Mich. 21, 189 N. W. 907; Payne, Agent, v. Lyon, 154 Ga. 501, 114 S. E. 892; Harmon v. Hines, 113 S. C. 179, 101 S. E. 925; Farr v. Ry. Co. et al., 154 Ark. 585, 243 S. W. 800; Seaver v. Hines (D. C.) 261 Fed. 239; Smith v. Babcock (D. C.) 260 Fed. 679; Geddes v. Davis, Agent (Idaho) 210 Pac. 584; Liberty Sales Co. v. Davis, Agent (N. Y. Mun. Ct.) 198 N. Y. Supp. 255.

Congress, the President, and the Director General, in inaugurating the system of fed-

eral control, were extremely cautious in safeguarding the rights of all parties guaranteed under existing laws, state and federal, and sought to leave them unimpaired as nearly as possible, consistent with the needs of the government. As stated in Smith v. Babcock:

"It seems obvious that Congress intended to interfere as little as could be avoided with the situation existing at the time the railroads were taken over, and that the rights and remedies of all persons should be preserved and might be enforced with a minimum of interference with pre-existing rights and remedies. * * * The fact that the liability arising during federal control is not a liability of the owners of the railway lines, but of the United States, requires for convenience that the party to be sued should be its Director General; but at the same time it seems manifest that no change in the manner or method of asserting that liability was intended or has been made."

A brief review of some of the cases cited will show the correctness of the proposition we have stated above and its application.

In the case of Bostwick v. Director General, the Wabash Railroad and the Pere Marquette Railroad were both being operated by the Director General. Bostwick was a brakeman on a train of the Wabash Railroad. Having stepped off his train, he was struck by a locomotive of the Pere Marquette Railroad. In his action Bostwick made the contention that as both railroads were being operated by the Director General, the employés of the Wabash and the Pere Marquette were servants of a common master, and he was entitled to recover under the federal Employers' Liability Act. Basing its decision upon the case of Railway Co. v. Ault, supra, the Supreme Court of Michigan held that while the government exercised "one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority" of all railroads, yet the roads were so held and controlled as separate identities; and therefore Bostwick as an employé of the Director General in the operation of the Wabash Railroad was in no sense a fellow servant with the employés of the Director General in the operation of the Pere Marquette Railroad.

In the very recent case of Granquist v. Ry. Co., supra, the Minnesota court has held:

"When the federal government took control of the railroads in this country, they were taken over and dealt with as separate entities. The several systems did not lose their identity, the situation being analogous to that which would have existed if there had been a general receivership of each system. They were severally dealt with as active, responsible parties, answerable for their own wrongs, and there was no such consolidation as rendered all the railroad companies in effect one company; hence service of process in an action against the agent of the President * * * brought him into court only as the representative of the carrier whose agent or officer was served with process."

The Supreme Court of Arkansas in the case of Farr v. Railway Co., supra, held that the Director General of Railroads served with process as agent in control of a connecting carrier doing business in Arkansas was not in court as representative of a delivering carrier, a Texas corporation bearing the same name, although it was represented by him as agent also.

In Harmon v. Hines, supra, service was had on the agent on the line of the Southern Railway, operated by the Director General, but the cause of action arose in connection with the operation by the Director General of the Seaboard Air Line Railroad, and the service was held insufficient, the court saying:

"A review of the act of Congress, the proclamation of the President, and the general orders of the Director General shows no intention on the part of the government to destroy the identity and integrity of the several railway systems. The control of the government is absolute; yet the identity of each system is retained for the operating and accounting."

In the case of Seaver v. Hines (D. C.) 261 Fed. 240, 241, a question of jurisdiction arose, based on service similar to that in the two cases just mentioned. The following from the opinion by Judge Aldrich is pertinent and instructive:

"But the position is taken by the plaintiff that, since the federal control of railroad transportation systems as effectuated by the orders of the Director General, causes of action are not prosecuted against the individual carriers, but against the Director General as the representative of all the systems operated by the government.

"This position is true in a fictional sense, but not in any general or substantial sense. It is only to be accepted in an exceptional sense. The order requiring suits to be brought against the Director General, and this without regard to the question whether the Director General had authority to make it, was based upon the idea that, while government control exists as a war measure, the government is, in a certain sense, the owner of funds resulting from the operation of the lines, or at least in control of them, to be used to pay operating expenses and liabilities, subject ultimately to reasonable adjustment as between the government and the owners, and is responsible for the management of the various railroads, and therefore, as a matter of convenience and of reasonable precaution, might so far regulate court procedure as to require actions to be brought against the Director General. But this, so far as concerns procedure, aside from the name, is, in a very large sense, nominal, and it is against reason to contend that the purpose of such an order was, in a substantial sense, to consolidate and merge the various individual interests, or, in other words, the various individual railroads

of the country into a single system, to the end that new remedies should be had and jurisdiction created upon a kind of service not theretofore known in legal or equitable procedure."

The case of Payne v. Lyon, supra, by the Supreme Court of Georgia is almost a parallel case with the present one, so far as the application of the principle announced is concerned. In that case Lyon was a fireman on a train of the Louisville & Nashville Railroad, which was being operated by the Director General. While running a train over the line of the Western & Atlantic Railroad, which was also being operated by the Director General, Lyon was injured. Negligence was alleged on the part of the employés of the Western & Atlantic Railroad. The trial court admitted in evidence certain rules of the Louisville & Nashville Railroad, by way of showing the duties incumbent on the employés of the Western & Atlantic Railroad, and their negligence in failing to observe such rules. The plaintiff insisted that the evidence was admissible, because the Director General was operating both roads, and the employés were all common servants of the same master. In disposing of the question, the court held:

"The Director General of Railroads has to be treated as the director of each separate system of transportation under his control; and the separate systems which were operated by him were distinct and independent parties."

The case was reversed because of the admission of the rules in evidence.

[1] Under federal control there was undoubtedly unity of operation, but not of ownership. There was a general management through the agents of the government, but not a merger of railroads or systems of transportation. Liability was assumed by the government, but it grew out of the operation of particular railroads, and not out of the general conduct of the unified system of operation. Fitzhugh v. Ry. Co. et al., 79 N. H. 371, 109 Atl. 564. Under the clear import of the act of Congress and the authority of the decisions referred to, the Director General in his operation of the St. Louis, Brownsville & Mexico Railroad should be regarded as distinctly a different person from the Director General in respect of the operation of the Texas Mexican Railway; and in these two relations he was entitled to assert different defenses and avail himself of all the rights which might have been claimed by the two railway companies, in the absence of federal control. It was therefore error for the trial court to disregard this theory of defense urged by the plaintiff in error, and to submit special issue No. 1 in the form it was submitted.

Plaintiff in error, as representative of both of the railway companies, pleaded contributory negligence on the part of Conductor McLean. In response to special issue No. 3 the jury found that McLean was guilty of negligence in some of the particulars charged. They further found that such negligence was neither the sole cause nor the proximate cause of the collision which resulted in his death. In answer to special issue No. 5, the jury found that the sum of $29,750 would reasonably compensate Mrs. McLean and others for the pecuniary loss sustained by reason of the death of W. F. McLean. To special issue No. 6, they answered that this sum should be diminished by reason of negligence attributable to McLean in the sum of $5,-950. The trial court disregarded this finding, and entered judgment for the full sum of $29,750, presumably upon the theory that, as the negligence of McLean was neither the sole nor proximate cause of the injury, the rule by which damages were to be diminished would not apply.

[2] Section 8659, U. S. Comp. St. (federal Employers' Liability Act, § 3), provides that contributory negligence shall not be a bar to recovery, where the injury results in whole or in part from the negligence of the carrier, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employé. The negligence of the employé need not be the sole proximate cause of the injury to authorize a diminution of the damages, but it must be a contributing cause. As held by the Supreme Court of the United States in Railroad Company v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172:

"The direction in the Employers' Liability Act that the diminution of damages in case of plaintiff's contributory negligence shall be in proportion to the amount of negligence attributable to the injured employé, can only mean that where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both."

See, also, Railway Co. v. Skaggs, 240 U. S. 73, 36 Sup. Ct. 249, 60 L. Ed. 532; Railway Co. v. Estes (Tex. Com. App.) 228 S. W. 1087; Railway Co. v. Cooper (Tex. Civ. App.) 191 S. W. 579.

On another trial the issues and charges of the court should present this question in accord with the rule here announced.

[3] Complaint is made to the action of the trial court in refusing to strike out the testimony of J. S. Byerley with reference to the speed of the train on the Texas Mexican Railway at the time of the collision. We think the objection urged goes more to the weight of the testimony than to its admissibility. On another trial the witness should be required to qualify himself under the proper rules before being permitted to state his opinion or conclusion.

[4] The remaining assignment relates to

the action of the trial court in refusing to permit witnesses for plaintiff in error, who were expert trainmen, to state what conclusion or inference would have been reached by them, if they had failed to find the usual signals which the rules required to be put out or displayed under conditions existing at the time of the collision. The rules were in evidence, and it appears that those in charge of the trains at the time were permitted to interpret them and testify to their application. This being true, we do not think the court erred in refusing to permit the witnesses to testify to such conclusions.

We recommend that the judgment of the Court of Civil Appeals and the district court be reversed, and the cause remanded.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.