DAVIS, Federal Agent, v. STANDARD RICE CO., Inc.  (No. 8720.)*

Court of Civil Appeals of Texas. Galveston. June 9, 1926.

Rehearing Granted in part Feb. 10, 1927. Appellee's Motion for Rehearing Denied March 25, 1927.

**1. Railroads ⬳5½(28)—To establish claim against Director General for negligent operation of railroad, petition must disclose identity of road (Federal Control Act, § 10 [U. S. Comp. St. § 3115¾j]).**

Federal Control Act, § 10 (U. S. Comp. St. § 3115¾j), in no way changes the separate entity of the railroads after they are taken over by the government, but the Director General in the operation of each road sustains a relation to it separate and distinct from his relation to other roads under his control, so that to establish a claim for damages against him growing out of negligent operation of one of the roads under his control, petition must disclose identity of the road and show plaintiff's right to a judgment against him as operator of such road.

**2. Pleading ⬳402—Defect of petition against Director General of Railroads in not disclosing railroads over which shipments were made held cured by answer and plaintiff's supplemental petition.**

Defect of petition against Director General of Railroads for injury to shipments in not disclosing identity of the roads over which shipments were made, other than by allegations as to points of origin and destination of each shipment, was cured by the companies, over whose roads the shipments were made, answering and claiming and obtaining exemption from liability on ground that their roads at the time of the shipments were in the possession of and being operated by the government, and by plaintiff in supplemental petition, in response to such answer adopting, as against the answering railroads, all the allegations of his original petition against the Director General.

**3. Appeal and error ⬳1011(1)—Finding on conflicting evidence cannot be disturbed, unless so against weight of evidence that it can be held to be clearly wrong.**

Finding on conflicting evidence cannot be disturbed; it not being so against the great weight and preponderance of evidence as to justify the appellate court in holding that it is clearly wrong.

**4. Damages ⬳141—Plaintiff need not plead rule for measurement of damages, but only facts relied on and amount claimed.**

It is not necessary that plaintiff plead any specific rule for measure of damages claimed, but it is enough to plead the facts entitling him to recover, and state the amount claimed; it being for the court to apply the rule of measurement called for by the evidence.

**5. Damages ⬳157(1)—Damages are measurable by amount shown by pleading and evidence to have been lost by defendant's wrong.**

The only rule for measurement of actual damages applicable in all cases is that a plaintiff is entitled to recover amount that his pleading and evidence shows that he has lost by defendant's wrong.

**6. Carriers ⬳134—For injury to shipment of rice difference between purchase price and amount received after cleaning, plus cleaning cost and freight paid, held recoverable under evidence.**

Under evidence in action for injury to shipment of rice during Food Administration days, the rice having no market value in the condition in which carrier delivered it, held, that shipper could recover difference between price paid for rice, less amount received for it after being cleaned, plus cost of cleaning and freight paid.

**7. Damages ⬳44—Expenditure to reduce damages from another's wrong is element of damages.**

Proper expenditure by owner of goods to reduce damages thereto from another's wrongful act is recoverable, as an element of damages.

**8. Damages ⬳1—A rule of damages which will not under facts of case give fair and just compensation should not be followed.**

The primary purpose of rules for measurement of damages is to give fair and just compensation for loss, and no rule which would defect this purpose when applied to the facts of a particular case should be followed in that case.

**9. Carriers ⬳117—Whether injury by rain to shipment in leaky cars occurred before or after carrier became warehouseman, it was liable.**

Damage to shipment of rice being caused by leaky cars furnished by carrier, it is liable, whether the rain occurred before or after its liability as carrier changed to that of warehouseman, after lapse of time which consignee had in which to receive and unload shipment after notice of arrival.

**10. Evidence ⬳334(3)—Certificates of Food Administration fixing grade and value from samples of rice injured were properly admitted.**

The evidence in action for damages to shipment of rice during Food Administration time being sufficient to identify it as the rice from samples of which were made, the certificates of the Food Administration fixing grade and value introduced in evidence by plaintiff, they were properly admitted.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

293 S.W.—38    *Writ of error dismissed for want of jurisdiction May 4, 1927.

Appellant's Motion for Rehearing.

**1.1. Carriers ⬳177(4)—Connecting carrier is not liable for injury from leaks in sealed car received not apparent from outside.**

A carrier is not liable for injury from leak of a sealed car in which it received shipment from other road, the leak being discoverable only by inspection from inside; it not being required or authorized to break the seal for such purpose.

**12. Judgment ⬳303 — Judgment will be reformed to conform to pleadings.**

A reformation of judgment which will make it conform to the pleadings will be granted.

Appellee's Motion for Rehearing.

**13. Railroads ⬳5½(48)—Petition against defendant as federal agent of one road will not support judgment against him as such agent of other roads.**

Pleading, showing action for injury to shipment to be against defendant as federal agent for certain roads, cannot support judgment against him as federal agent for another road from which the shipment was received in a sealed car, defects in which, causing the injury by leakage, were not discoverable from the outside.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by Standard Rice Company, Inc., against James C. Davis, Federal Agent, substituted for Walker D. Hines, Director General of Railroads. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellant.

B. F. Louis and A. G. Haigh, both of Houston, for appellee.

PLEASANTS, C. J. Appellee brought this suit to recover damages for injury to seven carloads of rice shipped over railways operated and controlled by the defendant. The suit was originally against Walker D. Hines, Director General of Railroads, under the United States Railroad Administration. By supplemental petition filed April 6, 1923, appellant James C. Davis was made defendant; he having been appointed successor to the original defendant after the suit was filed.

The claims for damages set out in the petition are in substance as follows:

"First. That on or about December 14, 1918, Standard Rice Company purchased from the Ganado Mill & Elevator Company a carload of rice containing 76,000 pounds of No. 1 Blue Rose rice for transportation from Ganado, Tex., to Houston, Tex., and delivery at Houston to the plaintiff. That owing to the negligence of the defendant the rice arrived in Houston and was delivered to the plaintiff in a badly damaged condition, same being wet and rotten; that the market value of said rice at the time of delivery in Houston, had same been delivered in good order, would have been $3,307.40; that, owing to the damaged condition of said rice, the plaintiff, in an effort to minimize the loss from said shipment, milled the said carload of rice and sold, for the account of the defendant, the clean rice resulting from such milling for the sum of $2,353.87; that the plaintiff's damages from this car of rice amounted to $954.53.

"Second. That on or about the 21st day of January, 1919, there was delivered to the defendant, appellant herein, at Lissie, Tex., one carload of rice weighing 73,300 pounds, being bulk rough rice, for transportation and delivery to the plaintiff at Houston, Tex.; that by reason of the negligence of the defendant the said carload of rice became damaged while in transit and on its arrival at Houston it was in a badly damaged condition; that the plaintiff, in order to minimize the damage from said shipment, milled the damaged rice; that the said rice, in the condition in which it should have been received, was of the reasonable market value of $2,794.72; that the net sum realized from the sale of said milled rice was $1,761.13; that by reason of the negligence of the defendant the plaintiff had sustained damage in the sum of $1,033.59.

"Third. That on or about the 9th day of January, 1919, there was delivered to the defendant company at East Benard, Tex., a carload of rice for transportation to Houston and delivery to the plaintiff; that said carload of rice arrived at Houston in a badly damaged condition; that in order to minimize the loss said rice was milled by the plaintiff for the account of the defendant; that said rice, in the condition in which it should have been delivered to the plaintiff at Houston, was of the reasonable market value of $1,632; that the net amount realized from the sale of said milled rice was the sum of $1,196.22; that the plaintiff sustained damage in the sum of $453.78.

"Fourth. That on or about December 20, 1918, there was delivered to the defendant a carload of bulk rice for transportation and delivery to the plaintiff at Houston; that owing to the negligence of the defendant, its agents, and employees, said rice, when it reached Houston and was delivered to the plaintiff, was in a badly damaged condition; that plaintiff, in order to minimize the loss, milled the damaged rice for the account of the defendant; that the rice in the condition in which it should have been received at Houston, Tex., was of the reasonable market value of $2,408.31; that the net amount realized from the sale of said milled rice was $1,704.86; that by reason of the negligence of the defendant the plaintiff was damaged in the sum of $703.45.

"Fifth. That on or about December 18, 1918, there was delivered by the Old River Company, as agent of plaintiff, delivered to the defendant company one carload of rice, at Mont Belview, Tex., for transportation and delivery to the plaintiff at Houston, Tex.; that, upon arrival of said rice at Houston, the same was in a damaged condition; that the plaintiff, in an effort to minimize the loss resulting from said shipment, milled said damaged rice for the account of defendant; that said rice in the condition in which it should have been received by

plaintiff at Houston was of the reasonable market value of $3,120.41; that the net amount realized from the sale of the milled rice was $2,206.46; that the plaintiff sustained damages by reason of the condition of said rice in the sum of $914.35.

"Sixth. That on or about December 18, 1918, there was delivered to the defendant company by M. Thellman and Ganado Mill & Elevator Company, as agents for plaintiff, at Ganado, Tex., one carload of rice for transportation and delivery to plaintiff at Houston; that at the time the rice arrived in Houston it was in a badly damaged condition; that plaintiff, in order to minimize the loss, milled the damaged rice for the account of the defendant; that the said rice, in the condition in which it should have been received by plaintiff at Houston, was of the reasonable market value of $2,994.10; that the net amount resulting from the sale of such rice was $2,260.92; that the plaintiff sustained damages by reason of the negligence of the defendant in the sum of $733.18.

"Seventh. That on or about January 7, 1919, there was delivered to the defendant company at Ganado, Tex., by the Ganado Mill & Elevator Company, as agent for plaintiff, one carload of rice, to be transported and delivered to the plaintiff at Houston, Tex.; that said carload of rice was damaged in shipment, and was delivered to plaintiff at Houston in a badly damaged condition; that the plaintiff, in an effort to minimize the loss, milled said damaged rice for the account of the defendant; that said rice, in the condition in which it should have been received at Houston, Tex., was of the reasonable market value of $2,660; that the net amount realized from the sale of said milled rice was $1,890; that the plaintiff sustained damages by reason of the negligence of the defendant in the sum of $769.01."

The total amount of damages claimed in the original petition was $5,543.89, but by amendment filed in February, 1924, plaintiff alleged its measure of damage to be the difference between the cost price of the rice with the freight and reconditioning charges added and the value of the rice after reconditioning, which difference was alleged to be the sum of $6,385.13.

The defendant, Walker D. Hines, Director General, answered by general demurrer and general denial. This answer was filed on December 2, 1919. Thereafter, on January 6, 1920, the Galveston, Harrisburg & San Antonio Railway Company and the Texas & New Orleans Railway Company filed a joint pleading in the case which they designated an answer to plaintiff's petiton, and in which they demur generally to the petition as showing no cause of action against them. They further specially plead in abatement of plaintiff's suit that the several shipments of rice, for injury to which plaintiff claims damages, each occurred during the time the defendant railways were in the possession and control of the government of the United States, and were being operated by the United States Director of Railroads by and through his agents and servants "actually operating and con-

trolling said lines of railroad and all the properties incident to such operation, including the train or trains in question, and these defendants show that none of the general officers, and no agent or servant authorized to represent them in any capacity whatsoever, had anything whatever to do with the transportation complained of, as must be conclusively inferred from the averments in plaintiff's petition. Wherefore, premises considered, these defendants pray that the motion be granted and that the court abate as to them this suit and discharge them with their costs." This answer also specially excepts to the petition on the grounds stated in the plea in abatement and further reiterates the facts stated in the plea in bar of plaintiff's right to recover against the defendant railways.

Plaintiff's supplemental petition making appellant a party defendant, which has been before referred to, alleges that plaintiff adopts its former pleadings against "the said railway company and Director General of Railroads, and the same in every material statement applies to this defendant, James C. Davis." Appellant answers only by excepting to plaintiff's supplemental petition, on the ground that plaintiff's right to make him a party to the suit in substitution of the original defendant was barred because more than one year had elapsed after original defendant had ceased to be Director General of Railroads before the filing of the supplemental petition and "more than two years have elapsed since the time James C. Davis was named as federal agent for the litigation of claims growing out of the federal operation of railroads, and that more than two years have elapsed since the passage of the Transportation Act of March 1, 1920, naming James C. Davis as such agent." He also specially pleaded the two years' statute of limitation in bar of plaintiff's suit. The trial in the court below without a jury resulted in favor of appellee for the sum of $7,086.06, with interest thereon at the rate of 6 per cent. per annum from February 1, 1919.

[1] The first proposition presented in appellant's brief and urged as requiring a reversal of the judgment is as follows:

"Under Federal Control Act, § 10 (United States Annotated Statutes 1918), the Director General of Railroads is distinctly a different person in the operation of each railroad under his control and in order to recover a valid judgment it is necessary to sue the federal agent, not in his general capacity, but as federal agent of the particular railroad against which the claim or cause of action is involved."

This proposition is not based upon any assignment of error contained in the record, but it is claimed that the face of the record shows facts which call for the application of the rule stated in the proposition, and the disregard of this rule constitutes fundamen-

tal error appearing upon the face of the record.

The statement in the proposition that "the Director General of Railroads is distinctly a different person in the operation of each railroad under his control" is manifestly sound in the sense that the Federal Control Act (U. S. Comp. St. §§ 3115¾a–3115¾p) under which the government took possession of the railroads in no way changed the separate entity of the railroads after they were taken over by the government. The act only placed the operation of the carriers under one directing head, but, in so far as its rights and liabilities were concerned, each road remained a separate entity, and the Director General in the operation of each road sustained to it a relation separate and distinct from his relation to other roads under his control. It follows from this that, in order to establish a claim for damages against the Director General growing out of the negligent operation of a railroad under his control, the identity of the road must be disclosed and plaintiff's right to a judgment against the Director General as operator of the particular road must be shown. St. Louis, B. & M. R. Co. v. McLean (Tex. Com. App.) 253 S. W. 248.

[2] Plaintiff's original petition does, not name the railroads over which its shipments of rice were made. In so far as the allegations of this petition are concerned, the identity of the railroads over which the shipments were made is only disclosed by the allegations as to the points of origin and destination of each shipment. Standing alone this petition may have been subject to a general demurrer, but when the railroad companies over which the shipments were made answered in the suit and claimed and obtained their exemption from liability on the ground that their property was in the possession of and being operated by the government at the time the shipments of plaintiff's rice were made over their railroads, and appellee, by supplemental petition, in response to this answer, adopted as against said railroad companies all of the allegations of his original petition against the Director General of Railroads, we think the pleadings as a whole sufficiently show the identity of the railroads over which the shipments were made.

These pleadings were all filed before appellant was made a party and answered in the suit, and, as before shown, his answer contained no exceptions to the pleadings on the ground now urged. We do not think that it should be held upon the record as it now stands that the pleadings show no cause of action against appellant because they fail to identify the railroad upon which the damage claimed by it occurred.

The evidence shows that the plaintiff, during the months of December, 1918, and January, 1919, made the several shipments of rice as alleged in its petition. All of these shipments, except the one from Mont Belview, which was made over the Texas & New Orleans Railway, were made over the Galveston, Harrisburg & San Antonio Railway. Both of these railroads at the time the shipments were made were in the possession of the United States government and were being operated and controlled by the government, through its Director General of Railroads.

[3] The evidence is sufficient to sustain the finding that the rice in each of the shipments was in good condition when received by the railroad company for shipment and was in the damaged condition alleged in the petition when delivered to appellee at Houston. There is little or no contradiction in the evidence as to the damaged condition of the rice when it was delivered to appellee at Houston, nor as to its apparent good condition when received by the railroad company.

While the evidence was amply sufficient to have sustained a finding by the trial court that the damage to the rice was not caused by any negligence of the defendant, but was due to moisture which the rice had absorbed in being harvested during a rainy season, the evidence does not compel such finding, and the contrary finding of the trial court is not so against the great weight and preponderance of the evidence as to justify this court in holding that it is clearly wrong and should be set aside. This conclusion disposes of the various assignments and propositions complaining of the findings of the trial court that the damage to the rice in each of the shipments involved in the suit was caused by the negligence of the carrier. None of these propositions can be sustained.

Under other propositions appellant complains of the judgment on the ground that there is neither pleading nor evidence to sustain the measure of damage applied by the court in fixing the amount adjudged to appellee.

Plaintiff's petition makes the following allegations as to the damage sustained by it in the first shipment of rice mentioned in the petition:

"That, owing to the negligence of defendant, his agent, and employees, the said rice arrived in Houston, and was delivered to this plaintiff in a badly damaged condition, same being wet and rotten; that the market value of the said rice at the time of delivery at Houston, Tex., had same been transported and delivered in good order, would have been three thousand three hundred and 40/100 ($3,307.40) dollars; that, owing to the damaged condition of said rice, this plaintiff, in an effort to minimize the loss from said shipment, milled the said carload of rice, and sold, for the account of defendant, the clean rice resulting from such milling for a net price of two thousand three hundred fifty-two and 87/100 ($2,352.87) dollars; that by the negligence of defendant, his agents, and employees, this plaintiff has been damaged in the

(293 S.W.)

sum of nine hundred fifty-four and 53/100 ($954.53) dollars."

Similar allegations are made in regard to each of the shipments; the only variation in the allegations being in the alleged market value of the respective shipments if they had been delivered in good condition and in the amounts for which the respective shipments were sold by plaintiff.

By trial amendment plaintiff alleged that the market price at which the rice was purchased by it, at the point from which it was shipped, and its price at Houston where it was delivered, were fixed by the United States Food Administration, the price at Houston being the price at point of origin plus the freight charges to Houston, and that the price at which plaintiff sold the rice for account of defendant was also fixed by the Food Administration; that, in order to realize the price obtained for the rice when it was resold by plaintiff, it was necessary for plaintiff to mill the rice, and because of its wet and damaged condition plaintiff was further required at a cost of 25 cents per barrel to subject the rice to a drying process, and that, in-addition to the difference between the cost price of the rice and the amount realized from its sale, plaintiff was entitled to recover the freight charges from the several ponts of shipment to Houston, together with the costs of drying and milling.

[4] We think all of the items of damage claimed in the petition were recoverable upon the evidence adduced on the trial. It is not necessary for a plaintiff to plead any specific rule for the measure of the damages claimed by him. All that is required is that he plead the facts which entitle him to recover damages and state the amount claimed, and it is for the court to apply the rule of measurement called for by the evidence. St. Louis, S. W. R. Co. v. Jenkins (Tex. Civ. App.) 89 S. W. 1106; Missouri, K. & T. R. Co. v. Mulkey & Allen (Tex. Civ. App.) 159 S. W. 111.

[5-7] The only rule for the measure of actual damages applicable in all cases is that a plaintiff is entitled to recover the amount his pleading and evidence show he has lost by the wrong of the defendant. We think the evidence in this case sustains the judgment as to the amount of plaintiff's damages.

When the rice in question was purchased and shipped by the appellee, the United States Food Administration was in control of the operation of rice mills. That authority fixed the grade and price of all rice bought and sold by the mills and also fixed the amount the mills could receive for milling the rice. This milling charge was fixed at 50 cents per barrel, the mill being also allowed to retain the by-products. The evidence shows that this allowance was not more than enough to cover the costs of the milling and a reasonable compensation for the service.

The evidence further shows that the proper agent of the Food Administration fixed the grade and price of the rice involved in this suit from samples taken as the rice was being loaded for shipment to Houston, and also examined and fixed the grade and price of the cleaned rice after it had been milled. There is no dispute as to the amount of freight paid by the appellee, and the undisputed evidence shows that the reasonable costs of drying the rice was 50 cents per barrel. The full amount adjudged appellee by the trial court does not exceed the difference between the amount paid by appellee for the rice and the sum for which it was sold by appellee after it was milled, together with the freight charges paid by appellee and the costs of drying and milling the rice. It seems to us that the amount of damages sustained by appellee in this case was accurately shown by the evidence.

As shown by the undisputed evidence, the rice had no market value in the condition in which it was when delivered to appellee at Houston. Such being the condition of the rice when it was received by the appellee, it was not only the right, but the duty, of the appellee to do whatever was reasonably necessary to restore, as far as possible, the value of the rice, and thus minimize the loss, and any reasonable expenditures or costs incurred by it in reconditioning and restoring the value of the rice was a proper element of appellee's damages.

In 10 Corpus Juris it is said:

"In addition to the damages heretofore considered, the carrier is also liable for any other and incidental damages which naturally and proximately result from the loss or the injury complained of. Plaintiff may recover from the carrier any reasonable expense in searching for, and regaining possession of, the goods, including a reward offered for their return, also the expense of putting the goods in salable condition"—citing several Texas cases where reasonable expenditures, made in an effort to restore stock, injured in shipments, to a marketable condition, were allowed the consignee as an element of his damages.

See, also, Texas Cases in Texas South West. Digest, p. 8634.

In 17 Corpus Juris, 806, it is said:

"As a general rule a party is entitled to all legitimate expenses that he may show to have been incurred by him in an honest endeavor to reduce the damages flowing from or following the wrongful act."

A case directly in point is the California case of Olcovitch v. Railway Co., 179 Cal. 332, 176 P. 459.

[8] The contention of appellant that the proper measure of damages in this case is the difference between the market value of the rice in its condition when delivered to appellant for shipment and its market value in the condition in which it was when re-

ceived by appellee is, we think, obviously unsound, because its application to the facts of this case would result in denying appellee fair compensation for the loss sustained by it. The primary purpose of rules for the measurement of damages is to give fair and just compensation for loss, and no rule which would defeat this purpose when applied to the facts of a particular case should be followed in that case.

[9] There being sufficient evidence to sustain the finding of the trial court that the proximate cause of the damage to the rice was the leaky condition of the cars in which it was shipped by appellant, the question of whether the rain which directly caused the damage to some of the shipments occurred after appellant's liability of carrier had changed to that of warehouseman is not material, because it was the duty of appellant as warehouseman to use ordinary care to protect the rice from damage, and if it negligently permitted the rice to remain in leaky cars and thereby become damaged after the time which appellee had to receive and unload the shipment after notice of its arrival, it would be liable for the damage thus caused. Hines v. Bank (Tex. Com. App.) 243 S. W. 972.

[10] We think the evidence was sufficient to identify the rice shipped by appellee as the rice from samples of which the certificates of the Food Administration fixing grade and value introduced in evidence by the plaintiff were made, and therefore the court did not err in admitting these certificates in evidence.

We have fully considered each and all of the propositions presented in appellant's brief, and none of them, in our opinion, show any error in the record which requires a reversal of the judgment. It would serve no useful purpose to further discuss these propositions in detail.

We are of opinion that none of them should be sustained, and that the judgment should be affirmed.

Affirmed.

### On Motion for Rehearing.

[11] Consideration of appellant's motion for rehearing has satisfied us that we erred in affirming the judgment of the trial court awarding appellee damages for the shipment of rice over the Texas & New Orleans Railway Company from Mont Belview to Houston, for which appellee by trial amendment claimed, and by the judgment was awarded damages in the sum of $1,699.78.

The ground upon which appellee sought and obtained judgment for damages to this car of rice was the negligence of the Texas & New Orleans Railway Company in furnishing a defective and leaky car for the shipment of the rice. A re-examination of the record discloses that the car in which this rice was shipped was not furnished by the Texas & New Orleans Railway Company, but the carload of rice was received by that company at Mont Belview from the Dayton & Goose Creek Railroad Company, a connecting carrier, which is not shown to have been under the federal Railroad Administration. The undisputed evidence in the record further shows that there were no apparent or visible defects in the car, and the leaks therein, if any, could only have been discovered by an inspection from the inside. The car was sealed and the Texas & New Orleans Railway Company was not required nor authorized to break the seal for the purpose of inspecting the car from the inside; there being nothing in its outside appearance to indicate its defective condition.

Appellant's motion for rehearing will be granted to the extent of denying appellee any recovery for damages to this carload of rice, and the judgment of the trial court reformed by deducting therefrom the sum of $1,699.78. In all other respects the motion for rehearing is overruled.

[12] Appellee has filed a motion requesting that the judgment be reformed so as to show that it is a judgment against appellant as federal agent for the Galveston, Harrisburg & San Antonio Railway Company. Such reformation of the judgment will make it conform to the pleadings as a whole as construed in our original opinion, and appellee's motion is therefore granted.

### On Motion for Rehearing by Appellee.

In holding, on appellant's motion for rehearing, that appellee was not entitled to recover in this suit for the damages awarded it by the trial court for injury to the carload of rice shipped from Mont Belview to Houston over the Texas & New Orleans Railway, we erroneously stated that the rice was received by that railway at Mont Belview from the Dayton & Goose Creek Railroad, a connecting carrier. The record shows that the shipment originated at Mont Belview, a station on the Dayton & Goose Creek Railroad, and was transported and delivered by that road to the Texas & New Orleans Railway at Dayton.

[13] Appellee alleged, and its judgment is based upon a finding by the jury, that the damage to the rice was caused by the negligence of the defendant in furnishing a defective car for the shipment of the rice. As shown in our original opinion, appellee by its petition sought to recover against James C. Davis in his general capacity as federal agent for all railways controlled and operated by the government, and not as such agent in charge of the railways by which the alleged damage was caused. We held in our main opinion that under the holding of our Supreme Court in the case of St. Louis, B. & M. R. Co. v. McLean (Tex. Com. App.) 253 S. W. 248, such petition was insufficient in it-

self to entitle plaintiff to maintain its suit, but that this defect in the petition was cured by the answers filed by the Galveston, Harrisburg & San Antonio Railway Company and the Texas & New Orleans Railway Company, and that the pleadings as a whole show that the suit was one against the defendant as federal agent for those railways. There is no pleading in the case to support a judgment against appellant as federal agent for the Dayton & Goose Creek Railroad, and for that reason we are of opinion that the judgment against him for damages caused by the negligence of that railroad cannot be sustained.

The motion for rehearing is therefore overruled.

Overruled.